UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:10-cr-00186-JAW |
| | ) | |
| DOMINGOS NOBREGA | ) | |

**ORDER ON DEFENDANT'S MOTIONS *IN LIMINE***

In this prosecution for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1), the Defendant seeks a pretrial ruling on the admissibility of a 9-1-1 telephone call log, letters and pictures, testimony of two witnesses, an internet chat, and a statement he wrote while at the Dorothea Dix Psychiatric Center. To provide guidance to the parties, the Court preliminarily addresses each issue.

**I.  STATEMENT OF FACTS**

On October 26, 2010, a criminal complaint was filed and an arrest warrant issued for Domingos Nobrega. *Compl.* (Docket # 1); *Arrest Warrant* (Docket # 4). He was subsequently arrested and indicted for possession of a Glock Model 17, 9mm handgun. *Executed Arrest Warrant* (Docket # 6); *Indictment* (Docket # 16).

The Government alleges that Mr. Nobrega has two prior felony convictions: first, for Assault with a Deadly Weapon Upon a Government Officer in violation of North Carolina Code General Statute 14-34.2, for which he received a sentence of 30 months probation, and which was later revoked resulting in a sentence of 16 to 20 months imprisonment; and second, for Assault and Battery on a Police Officer in

violation of Virginia Code Section 18.2-57, for which he received a sentence of 5 years imprisonment, all but 6 months suspended. *Gov't's Trial Br.* at 5–6 (Docket # 66). According to the Government, on October 23, 2010, Norella Meerzon, who resided with the Defendant, received a message from a friend, Eric Babilonia, that he had been receiving messages and calls from Mr. Nobrega stating that the Defendant had a gun and "was locked and loaded and ready to shoot." *Id*. at 6. Mr. Babilonia forwarded Ms. Meerzon an internet chat with Mr. Nobrega in which the Defendant allegedly made similar statements. *Id*. The same afternoon, Ms. Meerzon reported to the Bangor Police Department that Mr. Nobrega had been acting oddly for the previous four days, had been paranoid, and had accused her of being a DEA agent, a CIA agent and a police officer. *Id*. at 6–7. Ms. Meerzon explained that in March 2010 she had purchased for herself an A3 M-4 5.56 caliber rifle and a Glock Model 22 .40 caliber pistol, that Mr. Nobrega had possessed both of the firearms, and that the firearms were kept at their residence. *Id*. at 7. The Government asserts that Ms. Meerzon also purchased a third firearm, a Glock Model 17, 9mm pistol, and that the purchase date of all three firearms was not March but May 5, 2010. *Id*.

After speaking with Ms. Meerzon, the Bangor Police obtained a warrant to search the Meerzon-Nobrega residence and, after arriving at the location, over the course of four hours, attempted by telephone and electronic message to convince Mr. Nobrega to leave the residence. *Id*. at 8. The Government says that during the standoff with police, a police sniper observed through his rifle scope Mr. Nobrega

2

sitting at a kitchen table with a pistol in his hand. *Id.* When the police eventually secured access to the residence, they executed the search warrant and recovered, among other items, the Glock Model 17 pistol that is the subject of the indictment. *Id.* The Government alleges that after additional investigation, the police discovered that on the same day as the standoff, Mr. Nobrega had told a friend that he had possessed weapons, that a week before the standoff, several New York residents who were visiting Mr. Nobrega in Bangor saw him possess a handgun, and that approximately a month before the standoff, another friend had seen him possess a rifle and a handgun. *Id.* at 9.

## II. DISCUSSION

### A. Motion in Limine to Exclude 9-1-1 Call Trace Record

Mr. Nobrega moves to exclude a telephone trace record of a 9-1-1 call the Bangor Police Department received on October 23, 2010 from a telephone number matching the Defendant's cellular telephone number. *Mot.* in Limine *to Exclude 9-1-1 Call Trace R.* (Docket # 70) (*9-1-1 Call Mot.*). The record states that, during the call, the "caller threatened to shoot passing traffic with a high powered rifle." *Id.* at 1. Mr. Norbega counters that his wireless carrier has no record of any 9-1-1 call having been made on that day. Noting that "it is possible that persons may make calls from computers that can be made to appear to originate from identified phone numbers, wherein they were not actually made from the so-called 'originating' number assigned to a particular phone," he concludes that "the government cannot lay an adequate foundation to indicate that the reported 9-1-1 call actually originated with Mr. Nobrega," that reference to the call is therefore inadmissible

3

hearsay, and that admission of the document would be unduly prejudicial in light of its marginal evidentiary value. *Id.* at 2. The Government responds that the Defendant's motion is premature and should be denied without prejudice. *Gov't Resp. to Def.'s Mot.* in Limine *to Exclude 9-1-1 Call Trace R.* (Docket # 78). It says that "[i]n the event that the government moves the admission of such a document into evidence at trial, the Court would have ample opportunity to determine whether an adequate foundation had been laid, whether the proposed exhibit is relevant . . . and whether its probative value is substantially outweighed by any prejudicial effect . . . ." *Id.* at 1.

Although Mr. Norbega objects on foundational grounds, the Court views the real issue to be one of authentication: whether the Government can establish a sufficient evidentiary foundation to establish that the 9-1-1 call came from Mr. Norbega. Addressing authentication, the First Circuit explains:

> "In respect to matters of authentication, the trial court serves a gatekeeping function. If the court discerns enough support in the record to warrant a reasonable person in determining that the evidence is what it purports to be, then Rule 901(a) is satisfied and the weight to be given to the evidence is left to the jury."

*United States v. Paulino*, 13 F.3d 20, 23 (1st Cir. 1994) (internal citations omitted). "If there is evidence sufficient to support a finding that the evidence is what the proponent claims it to be, the preliminary threshold of authentication has been satisfied and the jury should then be permitted to consider its weight or credibility." *United States v. Arboleda*, 929 F.2d 858, 869 (1st Cir. 1991) (internal citation and quotation marks omitted) (admitting telephone records); *accord United States v. Garcia*, 452 F.3d 36, 40 (1st Cir. 2006) (explaining that, subject to a trial court's

4

preliminary finding that there is "sufficient evidence to allow a reasonable person to believe the evidence is what it purports to be, the evidence may be admitted subject to the factfinder's assessing what weight will be given to the evidence").

There are various ways to authenticate evidence:

> The direct testimony of a custodian or percipient witness is not a *sine qua non* to the authentication of a writing. Thus, a document's appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, can, in cumulation, even without direct testimony, provide sufficient indicia of reliability to permit a finding that it is authentic.

*Id.* (quoting *United States v. Holmquist*, 36 F.3d 154, 167 (1st Cir. 1994)). In particular, "[l]ike a wide array of other phenomena, telephone calls may be authenticated by exclusively circumstantial evidence." *United States v. Ingraham*, 832 F.2d 229, 236 (1st Cir. 1987). Such circumstantial evidence here might include that the Bangor Police recorded the 9-1-1 call the same day as Mr. Nobrega's alleged standoff with the Bangor Police, that the substance of the call is similar to statements Ms. Meerzon alleges Mr. Nobrega made earlier, and that the listed source of the call was his telephone number. Preliminarily, there appears to be sufficient evidence of authenticity to allow its admission.

Mr. Nobrega points to the possibility that the originating telephone number recorded in the 9-1-1 call had been altered to make it appear that the call originated from his telephone. However, "the burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable

5

likelihood." *Holmquist*, 36 F.3d at 168 (explaining that the possibility "that the photocopy had been doctored, or constituted an instrument through which [a witness], for whatever reason, aspired to carry out an elaborately staged hoax" was insufficient to eliminate the likelihood that a photocopy of a bank check was what it was purported to be).

Mr. Nobrega's objections to the admissibility of the 9-1-1 call record may cause the fact finder to give the record little or no weight. However, if Mr. Nobrega's cellular provider does not have a record of a 9-1-1 call or if the source of the call could have been faked, these facts would seem to go to weight and do not justify exclusion. *See United States v. McMahon*, 938 F.2d 1501, 1508–09 (1st Cir. 1991) (ruling a note properly authenticated despite the absence of testimony linking the handwriting to the Defendant, because there was other evidence sufficient to conclude that the note was a party admission). By the same token, the Court is being asked to rule preliminarily and the evidence at trial may require a different result. *See United States v. Cameron*, 733 F. Supp. 2d 182, 183 (D. Me. 2010) (dismissing without prejudice a defendant's motion *in limine* to exclude digital images because the "Court's ruling is preliminary only and is subject to the evidence the Government presents at trial").

A related issue is a Rule 403 balancing analysis: whether the probative value is substantially exceeded by the danger of unfair prejudice. FED. R. EVID. 403. Mr. Nobrega emphasizes that the 9-1-1 call threatened the use of a "high powered rifle" to shoot passersby but when the police searched the residence, they found a pistol,

6

no rifle. *9-1-1 Call Mot.* at 2; *see Gov't's Trial Br.* at 8 (Docket # 66). Mr. Nobrega says that "any marginal evidentiary value that [the telephone record] may have would be greatly outweighed by its prejudicial nature, in that no rifle was ever recovered from the residence on or after October 23, 2010, stemming from the alleged 9-1-1 call." *9-1-1 Call Mot.* at 2. If there were no other evidence of a high-powered rifle in the case, Mr. Nobrega's contention would be more convincing. However, the Government says that Ms. Meerzon, who was living with Mr. Nobrega, bought an A 3 M-4 5.56 caliber rifle on May 5, 2010. Whether the trial evidence will track Ms. Meerzon's rifle from its date of purchase to the date of this incident remains to be seen; however, on this record, the Court will not exclude the 9-1-1 call record on Rule 403 grounds.

### B. Motion to Have the Court Inquire Whether Government Witness Will Invoke Fifth Amendment While Testifying

Mr. Nobrega moves for the Court to inquire about whether a proposed Government witness will invoke her Fifth Amendment privilege against testifying. *Mot.* in Limine *to Have Ct. Inquire Whether Gov't Witness Will Invoke Fifth Amendment While Testifying* (Docket # 71). According to Mr. Nobrega, the proposed Government witness, Ms. Meerzon, "purchased the firearm named in the Indictment by using a Maine address when, in fact, at the time of the purchase, she did not live in Maine," a violation of 18 U.S.C. §§ 922(a)(6) or 924(a)(1)(A). *Id.* at 1. Mr. Nobrega theorizes that Ms. Meerzon may have been aware that he was a felon at the time of the purchase of the firearm, a possible violation of 18 U.S.C. § 922(d)(1). *Id.* The Government responds that it "does not believe that the evidence

7

establishes that Ms. Meerzon has violated the law or that she would incriminate herself during her testimony." *Gov't's Resp. to Def.'s Mot.* in Limine *to Have the Ct. Inquire Whether Gov't Witness Will Invoke Fifth Amendment While Testifying* at 1 (Docket # 76). Nonetheless, recognizing that the Defendant may have information about Ms. Meerzon not known by the Government, the Government does not object to the Court conducting an inquiry should the Government call her as a witness.

"When cross-examination on material issues raised on direct examination is curtailed because of a witness's valid claim of privilege . . . the trial court, in its discretion, may refuse to permit that witness's testimony." *United States v. Gary*, 74 F.3d 304, 310 (1st Cir. 1996). Before doing so, it is appropriate for the trial court to allow an inquiry outside the presence of the jury to determine whether Ms. Meerzon will invoke the Fifth Amendment. *See, id.; United States v. Victor*, 973 F.2d 975, 979 (1st Cir. 1992) ("Where the government has sufficient reason to believe that a witness may invoke his or her Fifth Amendment rights in response to questioning, the better practice requires that the prosecutor so inform the court, thus allowing for a *voir dire* to be conducted out of the presence of the jury to determine reliably that the witness will claim the privilege and the extent and validity of the claim" (internal quotation marks and citation omitted)). In view of the shared concern of the parties, the Court will inquire outside the presence of the Jury. The Court therefore grants the Defendant's motion.

### C. Motion in Limine to Exclude Other Bad Acts Evidence

Mr. Nobrega moves to exclude evidence related to two instances of his prior firearms possession that, in his view, show only his bad character or criminal

propensity. *Mot.* in Limine *to Exclude Other Bad Acts Evidence* (Docket # 73). First, Mr. Nobrega challenges the admission of testimony by Jason Rodriguez. According to Mr. Nobrega, Mr. Rodriguez will testify that he saw Mr. Nobrega with several guns in New York before the May 5, 2010 purchase date of the handgun that is the subject of the indictment. Mr. Nobrega argues that, if Mr. Rodriguez' testimony can only link the Defendant to gun possession before May 5, 2010, "due to the lack of nexus between the two instances of alleged firearm possession, the only basis for admission would be to show that Mr. Nobrega has a habit of firearm possession." *Id.* at 2–3.

The Government responds that Mr. Rodriguez will testify that while Mr. Rodriguez was in Bangor the week before the standoff, he was aware that Mr. Nobrega had a Glock and a rifle, and he knew he had two or three guns. *Gov't's Resp. to Def.'s Mot.* in Limine *to Exclude Other Bad Acts Evidence* at 1 (Docket # 77) (*Gov't's Resp. to Bad Acts Mot.*). Furthermore, Mr. Rodriguez is expected to testify that after May 5, 2010, while they were in New York City, Mr. Nobrega showed Mr. Rodriguez a rifle and told him that he had a Glock. *Id.* The Government offers Mr. Rodriguez as direct evidence of the Defendant's possession of the firearm charged in the indictment. *Id.*

Regarding the Glock, evidence that after May 5, 2010—the date Ms. Meerzon allegedly bought the Glock—Mr. Nobrega admitted that he possessed it, is admissible as non-hearsay, direct evidence under Rule 801(d)(2). *See* Fed. R. Evid.

9

801(d)(2) ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement . . . .").

However, the Court is less clear as to the purpose of Mr. Rodriguez' testimony that Mr. Nobrega possessed a second firearm—here a rifle—not charged in the indictment. The Government's opposition does not explain the evidentiary purpose of Mr. Rodriguez's proposed testimony about Mr. Nobrega's rifle possession and whether it will be linked to other evidence. At trial, the Government will have the opportunity to justify admission of Mr. Nobrega's proposed testimony and Mr. Nobrega may press his objection. Before Mr. Rodriguez testifies, counsel will be required to alert the Court.

Secondly, Mr. Nobrega moves to exclude the testimony of his neighbor, Ronald Jack, relating to a shots-fired incident near Mr. Nobrega's residence on October 3, 2010. According to the Government, it "does not intend to introduce such evidence in its case-in-chief . . . [and] will provide notice to the Court and to the Defendant in the event the government decides to attempt to use such evidence . . . ." *Gov't's Resp. to Bad Acts Mot.* at 2. The Court will address the Government's justification for introducing such evidence in the event it attempts to do so and, at that time, Mr. Nobrega may renew his objection.

Accordingly, the Court denies Mr. Nobrega's motion in part, grants it in part, and defers it in part. Regarding testimony of his possession after May 5, 2010 of the Glock charged in the indictment, the Court denies the Defendant's motion to exclude; regarding Mr. Jack's proposed testimony, the Court grants the motion as to

10

the Government's case-in-chief, and regarding the remaining issues, the Court defers ruling.

### D. Motion in Limine to Exclude Chat Session

Mr. Nobrega moves to exclude a document containing a series of electronic messages allegedly between Mr. Nobrega and Eric Babilonia. *Def.'s Mot.* in Limine *to Exclude Doc. Purporting to Contain Instant Message Chat Session* at 1 (Docket # 72) (*Def.'s Chat Mot.*). He argues that the document cannot be properly authenticated either as an actual electronic conversation or as having originated from him. *Id.* Mr. Nobrega further argues that the document constitutes inadmissible hearsay, is not the best evidence, and is unduly prejudicial. *Id.*

The Government responds that it will authenticate both the nature of the document and Mr. Nobrega's authorship through the testimony of Eric Babilonia. *Gov't's Mem. in Opp'n to Def.'s Mot.* in Limine *Re: Instant Message Chat Session* (Docket # 79) (*Gov't's Opp'n to Def.'s Chat Mot.*). It contends that once the document is authenticated, Mr. Nobrega's hearsay objection will become moot because the document will be admissible as an admission by a party opponent. *Id.* at 8 (citing FED. R. EVID. 801(d)(2)(A)). It further argues that statements in the document fit exceptions to the rule excluding hearsay because they relate to "then existing mental, emotional, or physical condition" and are statements against interest. *Id.* (citing FED. R. EVID. 803(3) and 804(b)(3)). Moreover, the Government asserts that, assuming the conversation is adequately authenticated, "the format in which the chat conversation is printed does not violate the best evidence rule." *Id.* at 10.

11

1.  **Authentication**

The Government expects Eric Babilonia to testify that "he engaged in the chat session with Defendant on October 23, 2010; that he knew it was Defendant for several reasons," that the e-mail accurately and completely reflects that chat, and that he "forwarded the chat session by e-mail to Meerzon without alteration" when the conversation was complete. *Id.* at 1. The Government further expects Bangor Police Detective Brent Beaulieu to testify that he saw the email forwarded to Ms. Meerzon "before it was printed and forwarded it, unaltered, to his computer for printing and the e-mail he turned over to the Government is the e-mail he received from Meerzon, without alteration." *Id.* at 1–2.

Mr. Nobrega contends that even if the document reflects the chat in which Mr. Babilonia engaged, "it is difficult to determine the identity of the person who is actually sending the messages." *Def.'s Chat Mot.* at 4. The Government responds that it can authenticate authorship "by introducing distinctive characteristics that associate the writing with a particular person." *Gov't's Opp'n to Def.'s Chat Mot.* at 6 (citing FED. R. EVID. 901(b)(4) and *United States v. Simpson*, 152 F.3d 1241, 1249–50 (10th Cir. 1998)). The Government expects Mr. Babilonia will testify to numerous distinctive characteristics supporting his understanding that he was conversing with Mr. Nobrega including:

1) The screen name "Leatherneck Nobrega," a name by which Mr. Nobrega had called himself in several previous internet-based communications with Mr. Babilonia;

2) References to the name "Ella";

3) Repeated references to the Marines;

4) The listing of a phone number that Mr. Babilonia knew to belong to Mr. Nobrega; and,

5) Mr. Babilonia's calling Ms. Meerzon after the chat to warn her not to return home to Mr. Nobrega.

*Id.* at 7–8.

Assuming the Government is able to establish the foundational evidence outlined in its opposition, it will meet the "reasonable likelihood" standard of authentication. Mr. Babilonia's testimony that the document is an accurate reflection of a chat session will mitigate Mr. Nobrega's concern that the "document may have been fabricated to appear to be an IM session log." *See Def.'s Chat Mot.* at 6. The plain language of Rule 901 provides that testimony that a matter is what it is claimed to be is sufficient to authenticate a document. That is precisely the nature of Mr. Babilonia's expected testimony.

Regarding authorship, the inability to know for certain whether Mr. Nobrega was on the other end of the conversation with Mr. Babilonia does not preclude its admissibility. *See Holmquist*, 36 F.3d at 167–68 (explaining that the possibility of a hoax is not sufficient to warrant exclusion). In determining whether a document has been adequately authenticated, the Court can consider "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Garcia*, 452 F.3d at 40. The distinct characteristics apparent in the document as well as Mr. Babilonia's ability to link

13

them to Mr. Nobrega, raise a strong inference that Mr. Nobrega transmitted the messages to Mr. Babilonia. Not only does the transmitting party's username, "DJLeatherneck Nobrega," use Mr. Nobrega's last name, Mr. Babilonia is expected to testify that the transmitting party listed Mr. Nobrega's phone number and made other references that contributed to his understanding that he was speaking with Mr. Nobrega. Again, the standard is reasonability. Comparing Mr. Babilonia's expected testimony with the document at issue, the inference that Mr. Nobrega was responsible for the transmissions is more reasonable than the inference that the transmissions were an elaborate hoax orchestrated by someone with intimate knowledge of Mr. Nobrega's personal life.

### 2. Hearsay

The parties apparently agree that if the document is authenticated, it is not hearsay because it is an admission by a party opponent. *Def.'s Chat Mot.* at 6–7; *Gov't's Opp'n to Def.'s Chat Mot.* at 8. Rule 801(d)(2)(A) provides in relevant part that "[a] statement is not hearsay if . . . The statement is offered against a party and is . . . the party's own statement . . . ." FED. R. EVID. 801(d)(2)(A). Assuming the Government authenticates the document, Mr. Nobrega's statements will meet the requirements of Rule 801(d)(2)(A). Once a document is authenticated as authored by a defendant, even if authorship is not entirely certain, it may be admitted as an admission by a party opponent. *See United States v. Newton*, 891 F.2d 944, 947 (1st Cir. 1989).

### 3. Best Evidence

Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." FED. R. EVID. 1003. Mr. Nobrega's only challenge to admission of the printout of the chat is the "the concern regarding whether the IM chat session forwarded by Mr. Babilonia through Ms. Meerzon is an actual chat session." *Def.'s Chat Mot.* at 7. Mr. Nobrega's best evidence objection essentially reiterates his authentication arguments. Having concluded that there appears to be sufficient evidence for the jury to reasonably conclude that Mr. Nobrega authored the chat, the Court concludes that a printout of the chat is admissible as a duplicate. *See United States v. Carroll*, 860 F.2d 500, 507 (1st Cir. 1988) (admitting a microfilm copy of a bank check where it had been "properly identified by a custodian of records as a complete and accurate reproduction thereof").

### 4. Rule 403

Whether Mr. Nobrega knowingly possessed a firearm is the single disputed issue in this case. The proposed conversation is highly probative of this issue. It is for the jury to weigh the evidence and determine whether the statements are Mr. Nobrega's. *See Arboleda*, 929 F.2d at 869. Where the Government can establish that the document is likely what it purports to be, the Court will not exclude it due to the mere possibility that it is not what it purports to be. The Court denies Mr. Nobrega's motion concerning the chat session.

### E. Motion in Limine to Exclude Letters and Photos

Mr. Nobrega moves "to exclude a series of personal letters and photographs which the Government recently indicated it may seek to introduce at trial." *Mot.* in Limine *to Exclude Letters and Photos* at 1 (Docket # 80). According to Mr. Nobrega, the Government has not identified which of the several hundred letters and photographs it will seek to introduce and under what basis, and the Defendant has not focused on any particular document. Rather, Mr. Nobrega "is filing this motion to alert the Court that an issue may arise with respect to such documents" and asks that the "Government identify which letters it may seek to introduce at trial . . . to allow the Defendant the opportunity to challenge the admissibility . . . outside the hearing of the jury." *Id.* In its response, the Government explains that its Exhibit List (Docket # 86) identifies eight letters from Mr. Nobrega that it may seek to introduce for cross-examination only. *Gov't's Resp. to Def.'s Mot. to Exclude Letters and Photos* at 1 (Docket # 88).

The Government appears to have addressed Mr. Nobrega's concerns. The motion is dismissed as moot.

### F. Motion in Limine to Exclude Certain Photographs

Mr. Nobrega moves to exclude "a series of photographs [allegedly taken by Ms. Meerzon] which depict a person who is wearing a face covering and is holding an item which may be a rifle." *Mot.* in Limine *to Exclude Certain Photographs* at 1 (Docket # 81). Repeating his concern with the 9-1-1 call and the internet chat, Mr. Nobrega raises the possibility that the photographs were altered. *Id.* at 2. He says that the Government cannot properly authenticate the documents because "the 'authenticating' party is also the party who may have created the false document."

*Id.* The Government responds that it intends to introduce the photograph only for "re-direct examination and/or for use in cross-examination of the Defendant" and that "the Court would have the benefit of the context of the entire trial with which to gauge the authentication and relevance of any one of the photographs." *Gov't's Resp. to Def.'s Mot.* in Limine *to Exclude Certain Photographs* at 1–2 (Docket # 89).

The Court dismisses Mr. Nobrega's motion without prejudice. Testimony by Ms. Meerzon that the document accurately reflects the scene she photographed will be sufficient to authenticate the photographs; a reasonable person could, based upon her testimony, conclude that the photographs are what they purport to be. *See Garcia*, 452 F.3d at 40. The jury may choose to believe or disbelieve Ms. Meerzon's testimony. In this respect, Mr. Nobrega's suggestion that Ms. Meerzon may have doctored the photographs creates an issue of credibility, not admissibility. *See Arboleda*, 929 F.2d at 869.

### G. Motion *in Limine* to Exclude Defendant's Written Statement

Mr. Nobrega moves to exclude a fourteen-page statement he wrote while at the Dorothea Dix Psychiatric Center for a state of Maine psychiatric evaluation. *Mot.* in Limine *to Exclude Def.'s Written Statement* (Docket # 83). Mr. Nobrega urges the Court to exclude the statement under Rule 12.2(c)(4), which precludes admission of a defendant's statements that were made in the course of a court-ordered competency hearing. Acknowledging that "Rule 12.2(c)(4) foresees that the psychiatric evaluation will be conducted in a federal proceeding," Mr. Nobrega says that "the rule should not be so easily defeated by having statements made while in a state court proceeding rendered admissible by switching venues." *Id.* at 1. Mr.

Nobrega argues, further, that even if the statement is not excludable under Rule 12.2, it should nonetheless be excluded under Rule 403 since "[t]he information which carries any legitimate evidentiary value is drowned out by that which is prejudicial." *Id.* at 2.

The Government responds that Mr. Nobrega's handwritten statement was not prepared as part of a state-ordered psychiatric examination. *Gov't's Resp. to Def.'s Mot. to Exclude Def.'s Written Statement* (Docket # 87) (*Gov't's Resp. Def.'s Statement*). The Government says "it is a sworn and notarized affidavit that Defendant drafted and provided not to doctors or other medical personnel involved in the examination but to government agents for his own reasons which had nothing to do with the examination." *Id.* at 1.

As a preliminary matter, the parties must clarify their basic disagreement: about whether Mr. Nobrega handwrote the statement voluntarily for law enforcement or involuntarily for a state-compelled competency evaluation. If the former, Rule 12.2(c)(4) is not implicated. *See* FED. R. CRIM. P. 12.2(c)(4) (stating that the statement must be made "in the course of" a psychiatric evaluation). If the latter, Rule 12.2(c)(4) may still not apply. Rule 12.2(c)(4) makes explicit that statements are inadmissible where made during an examination "conducted *under this rule.*" *Id.* (emphasis supplied). It follows that statements made in the course of an examination ordered under other authority may not be subject to Rule 12.2(c)(4). *See United States v. Miller*, 267 F. Supp. 2d 104, 106 n.4 (D. Me. 2003) (noting that in the case of an examination ordered "pursuant to the Court's

authority under section 4241 . . . the bar to the use of Defendant's statements and to the results of the examination would not be in place"). Mr. Nobrega acknowledges his psychological examination was at the request of the state of Maine, not federal authority.

Turning to Mr. Nobrega's Rule 403 objections, the Court notes that "Rule 403 is a liberal rule under which relevant evidence generally is admitted." *Jacques v. Clean-Up Grp., Inc.*, 96 F.3d 506, 516 (1st Cir. 1996). As the Government points out, some of Mr. Nobrega's statements have a direct bearing on other issues he raised in his companion motions *in limine*. *Gov't's Resp. Def.'s Statement* at 2–3. The handwritten statement is clearly relevant. At the same time, on this limited record, the Court cannot properly evaluate whether the statement is unfairly prejudicial. If—as he alleges—Mr. Nobrega wrote out the statement as part of a state court-ordered competency evaluation, the Court is uneasy about its admissibility regardless of Rule 12.2(c)(4), but neither Mr. Nobrega nor the Government provided any case law on this point.[1]

Finally, it is unclear whether the Government seeks to introduce the statement during its case-in-chief or whether it intends to use the statement to impeach Mr. Nobrega should he take the stand.

In sum, there are too many unanswered questions about Mr. Nobrega's handwritten statement for the Court to rule on its admissibility pretrial. The Court defers ruling.

---

[1] The Court is aware that Mr. Nobrega has no obligation to bring these matters to the Court's attention before trial and that the Government prepared a hasty response to Mr. Nobrega's late-filed motion.

## III. CONCLUSION

Subject to trial context, the Court preliminarily DENIES Domingos Nobrega's Motion *in Limine* to Exclude 9-1-1 Call Trace Record (Docket # 70); GRANTS his Motion *in Limine* to Have Court Inquire Whether Government Witness Will Invoke Fifth Amendment While Testifying (Docket # 71); DENIES his Motion *in Limine* to Exclude Document Purporting to Contain Instant Message Chat Session (Docket # 72); GRANTS in part, DENIES in part, and DEFERS in part his Motion *in Limine* to Exclude Other Bad Acts Evidence (Docket # 73); DISMISSES his Motion *in Limine* to Exclude Letters and Photos (Docket # 80); DISMISSES his Motion *in Limine* to Exclude Certain Photographs (Docket # 81); and DEFERS ruling on his Motion *in Limine* to Exclude Defendant's Written Statement (Docket # 83).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 23rd day of May, 2011