UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10-cr-00186-JAW |
| | ) | |
| DOMINGOS NOBREGA | ) | |

**ORDER ON MOTION FOR NEW TRIAL**

Concluding that the Defendant's motion for new trial is grounded on a claim of ineffective assistance of counsel, the Court dismisses the motion without prejudice to allow the Defendant to later initiate a petition for post-conviction relief.

**I.     STATEMENT OF FACTS**

    **A.     Procedural History**

On May 24, 2011, after a two-day jury trial, Domingos Nobrega was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *Indictment* (Docket # 16); *Jury Verdict Form* (Docket # 98). On June 1, 2011, Mr. Nobrega moved *pro se* for appointment of new counsel and for a new trial. *Def.'s Mot. of Dismissal of Counsel & Appointment* (Docket # 117); *Notice of Appeal* (Docket # 129).[1] On June 10, 2011, the Court appointed new counsel. *Order* (Docket # 119). On July 8, 2011, Mr. Nobrega's new counsel moved for an extension of time to file a motion for new trial "for a reasonable time after receipt of transcripts of the trial proceedings by counsel." *Def.'s Mot. to Enlarge the Time Within Which to File Mot. for New Trial* at 3 (Docket # 125). On July 19, 2011, the

---

[1] Although captioned a Notice of Appeal, it is apparent the pleading is a motion for new trial and the Court has treated it as such.

Court granted the motion over the Government's objection and ordered that the Defendant file a memorandum in support of his motion for new trial within twenty-one days from the date the trial transcript was prepared. *Order on Mot. to Extend Time to File Mot. for New Trial* (Docket # 130). The transcripts were filed on August 24, 2011. *Partial Tr. of Proceedings* (Docket # 136) (*Tr. Vol. I*); *Partial Tr. of Proceedings* (Docket # 137) (*Tr. Vol. II*). Mr. Nobrega filed no response.

On September 16, 2011, Mr. Nobrega, acting *pro se*, filed a motion for an audience with the Court, *Mot. for Audience with Chief District Judge/personal lette[r] to Judge Woodcock Jr.* (Docket # 144) (*Mot. for Audience*); on September 29, a notice of appeal, *Notice of Appeal* (Docket # 146); and, on October 5, a motion for transfer within the prison system. *Mot. to Transfer* (Docket # 147). On October 7, 2011, the Court held a hearing to address these motions. *Minute Entry* (Docket # 149). By holding the hearing, the Court satisfied Mr. Nobrega's request for an audience with the Court and the Court entered an Order, granting that motion. *Order* (Docket # 150). The Court explained to Mr. Nobrega that his request for transfer should be brought to the attention of the United States Marshal and his appointed counsel agreed to pursue his request with the Marshal's Office. Accordingly, the Court terminated the motion for transfer. *Id.* Citing appellate rule 4(b)(2), the Court observed that although Mr. Nobrega had now filed two notices of appeal, those notices would not become effective until judgment is entered. FED. R. APP. P. 4(b)(2).

This left Mr. Nobrega with his motion for new trial. Mr. Nobrega's motion was filed *pro se* and typically, with defendants who are represented by counsel, the Court gives the defendant's attorney an opportunity to review the motion and either adopt it or not. Here, Mr. Nobrega's defense counsel, acknowledging his obligations to the Court and his client, said that he would adopt the motion; however, he also observed that the focus of the argument was not the trial itself, but the strategic decisions of Mr. Nobrega's trial counsel, which would more properly be addressed in a post-conviction proceeding under 28 U.S.C. § 2255. He then allowed Mr. Nobrega to speak to the Court and express the concerns that led to his filing a motion for new trial. Mr. Nobrega explained in detail why he believed his trial was unfair and, as his defense lawyer predicted, focused his energy on his trial attorney's strategic decisions. Finally, after the hearing, Mr. Nobrega filed another set of documents in support of his pending motion under the heading Motion to Seek Justice. *Mot. to Seek Justice* (Docket # 151).

**B. The Charge and the Trial**

On November 18, 2010, a federal grand jury indicted Domingos Nobrega of possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g)(1). *Indictment* (Docket # 16). Jury trial began on May 23, 2011 and on May 24, 2011, the jury issued a verdict, finding Mr. Nobrega guilty as charged. *Jury Verdict Form* (Docket # 98).

Trial testimony revealed that in October 2010, Mr. Nobrega, who had previously been convicted of a felony, was staying in Bangor, Maine with his

3

girlfriend Norella Meerzon. During the months before October 2010, Mr. Nobrega had been in email communication with a friend by the name of Eric Babilonia. Mr. Babilonia became increasingly concerned about Mr. Nobrega's emails and he let Ms. Meerzon know about Mr. Nobrega's apparent instability. On October 23, 2010, Ms. Meerzon went to the Bangor Police and showed them email correspondence that Mr. Babilonia had shared with her. Based on the email correspondence, the Bangor Police set up a tactical team around Mr. Nobrega's home in Bangor. After repeatedly attempting to contact Mr. Nobrega over the next four hours, the police teargassed the residence. Mr. Nobrega emerged peacefully and the police arrested him.

During the hours the tactical team had the residence surrounded, a Bangor Police Detective trained as a sniper, Joel Nadeau, testified that he had the Nobrega residence under surveillance with a high powered scope and saw Mr. Nobrega hold a semiautomatic handgun. Another Bangor Police Detective, Erik Tall, participated in the execution of a search warrant of the Nobrega premises sometime just after midnight and found a 9-millimeter Glock pistol underneath the mattress in the master bedroom. Detective Nadeau identified the Glock that Detective Tall found as bearing a very close resemblance to the handgun he observed in Mr. Nobrega's hand the evening before. *Tr. Vol. II* 155:16-19. The Government called several other police officers who confirmed the events surrounding the tactical team's staking out of the Nobrega residence and his arrest.

In addition to the police officers, the Government called a number of lay witnesses. Mr. Babilonia confirmed that among other things Mr. Nobrega had said that caused him to contact Ms. Meerzon was that he was "sitting next to his gun," and that he was "locked, cocked and ready to go, pretty much he had his guns, and he was suited up." *Tr. Vol. I* 21:22-23; 22:14-15.

During the days leading up to October 23, 2010, a group of friends from New York visited the Nobrega-Meerzon residence. One was Crystal Schroeder. Ms. Schroeder arrived at the Bangor home on October 18th or 19th with Jason Rodriguez, Christopher Sherrill, and Justina Cipriano, and a woman named Olga. Ms. Schroeder testified that when she arrived at the Meerzon home, Mr. Nobrega opened the door and was carrying a black handgun. *Id.* 38:18-23. Ms. Schroeder said that she noticed the same firearm on the nightstand in Ms. Meerzon's and Mr. Nobrega's bedroom. *Id.* 39:10-12; 41:17-22. Finally, she testified that the evening before the New York friends left, when they sat down for dinner, Mr. Nobrega got dressed up in a black bullet-proof vest, a robe, a shoulder holster, and a gun in the holster. *Id.* 39:7-43:12. Ms. Schroeder identified Exhibit 6, which was the Glock that Detectives Tall and Nadeau identified, as being the firearm that Mr. Nobrega had in his holster. *Id.* 42:16-43:12. Ms. Schroeder said that Mr. Nobrega described the meal as the "Last Supper" and during the meal, he brought out a Bible and had Ms. Schroeder read a passage about betrayal. *Id.* 41:7-12.

Christopher Sherrill also testified. He arrived in Bangor with Justina Cipriano, Crystal Schroeder, Jason Rodriguez, and Olga. He confirmed that he had

5

seen a handgun in the master bedroom on a nightstand. *Id.* 55:20-56:4. Mr. Sherrill testified that when he and Justina Cipriano were in one of the bedrooms, Mr. Nobrega entered wearing a black shoulder holster with a gun. *Id.* 57:4-21. Mr. Sherrill later saw the holster through the white robe Mr. Nobrega was wearing that evening. *Id.* 58:3-14. He confirmed that Mr. Nobrega called the dinner the "Last Supper." *Id.* 58:15-18. Mr. Sherrill testified that Mr. Nobrega told him that he had the gun in order to protect himself from Jason Rodriguez, who he thought was a police officer. *Id.* 59:25-60:6. Mr. Sherrill identified Exhibit 6 as appearing to be the same firearm that was on the nightstand in the master bedroom. *Id.* 60:16-24.

Justina Cipriano testified. She corroborated Mr. Sherrill's testimony about Mr. Nobrega coming into their bedroom with a gun and a vest. *Id.* 68:2-9. She also was "pretty sure" he was playing with the firearm, cocking it. *Id.* 69:9-13. Similarly, she identified Exhibit 6 as appearing like the gun Mr. Nobrega had in the bedroom. *Id.* 68:25-69:3.

Jason Rodriguez testified. Mr. Rodirguez is a sound technician who met Mr. Nobrega in the music business in New York, and they had developed a "working relationship." *Id.* 73:3-4; 73:9-74:8. Mr. Rodriguez testified that while they were in New York, Mr. Nobrega had told him he had a gun and that Mr. Rodriguez had witnessed one. *Id.* 75:9-17. When Mr. Rodriguez arrived in Maine to visit Ms. Meerzon and Mr. Nobrega, Mr. Rodriguez did not see Mr. Nobrega with a firearm, but he confirmed details about the so-called "Last Supper," including Mr. Nobrega's white robe and Bible readings. *Id.* 79:14-80:14.

The Government also called April Renee Maness as a witness. She has known Mr. Nobrega ever since she was 12 or 13 years old. *Vol. II* 138:11-14. She said that on October 23, 2010, he began texting her about having "some kind of a crisis." *Id.* 139:2-6. He thought his girlfriend was having him followed by the FBI. *Id.* 139:6-9. He told Ms. Maness that "he wasn't going down without a fight and he was packed." *Id.* 140:22-23.

Mr. Nobrega did not testify. *Id.* 223:2-225:4. The defense called one witness, an investigator, who provided foundational evidence for the admission of a deed, which confirmed that Ms. Meerzon and Mr. Nobrega both owned the house where this incident took place and that a number of liens and mortgages had been filed against the premises, and that Ms. Meerzon was suing Mr. Nobrega civilly. *Id.* 226:21-237:15.

### C. Domingos Nobrega's Perspective

Mr. Nobrega strenuously contends that he is actually innocent of the charge, that he did not possess the firearm, and that he was set up by his girlfriend, Norella Meerzon. Mr. Nobrega starts by acknowledging that as of October 2010, he had previously been convicted of a felony and could not possess a firearm. He asserts that his girlfriend, Ms. Meerzon, knew that he was a felon and further knew that he would get in trouble with the law if he possessed a firearm. Nevertheless, he says that Ms. Meerzon bought a 9-millimeter firearm on May 5, 2010, snuck it into their Bangor home, and hid it in the house without his knowledge. In fact, he argues that Ms. Meerzon's purchase of the firearm in Maine was a violation of federal law

7

because she was not a Maine resident at the time, but a resident of New York. Mr. Nobrega asserts that having secreted the firearm inside their Bangor residence, Ms. Meerzon contacted the Bangor Police and falsely reported that Mr. Nobrega was engaging in bizarre behavior and had a firearm, and that this false report led to the standoff and to these charges. Mr. Nobrega is very upset that the Government has not prosecuted Ms. Meerzon for her allegedly illegal actions and instead has taken her side in a scheme to imprison him.

Mr. Nobrega explains the testimony of the lay witnesses at trial by arguing that they are friends of Ms. Meerzon and complicit in her plot. He also says that these friends hauled Ketamine to their house in Bangor, that they were taking drugs while they were in Bangor, and that he insisted that Ms. Meerzon make them leave. He maintains that Crystal Schroeder accused Jason Rodriguez of stealing her Ketamine and that Mr. Nobrega's actions at the "Last Supper" reflected his effort to get Mr. Rodriguez to admit his theft.

Mr. Nobrega believes that Norella Meerzon hatched this scheme in order to win her lawsuit against him and to oust Mr. Nobrega from his joint ownership of their Bangor home. Ms. Meerzon had filed a lawsuit against Mr. Nobrega seeking sole ownership of the Bangor home. Further, a local real estate agency had a lien and a local attorney had a mortgage against the property for debts Ms. Meerzon owed them and Ms. Meerzon therefore had an incentive to jettison Mr. Nobrega's ownership share since her share of the property had been compromised by accumulated debt.

Mr. Nobrega affirms that he did not possess a firearm during the evening and early morning of October 23-24, 2010. He admits that he did possess an Airsoft pistol, which he can legally possess. *Vol. II* 219:7-18. The Airsoft pistol originally had a large orange tip but the orange had been painted black. *Id.* 219:19-24. Mr. Nobrega contends that the police and the witnesses misidentified the Airsoft pistol as the Glock 9-millimeter. He also says that when he was spotted by the Bangor Police sniper holding an object, it was not a gun, but a cell phone.

In addition, he points out that no fingerprints were found on the Glock pistol, that during that evening, he came outside with his dogs and was unarmed, and that just before his arrest, he voluntarily exited the house and did not struggle with the police.

### D. Domingos Nobrega's Motion for New Trial

After the guilty verdict, Mr. Nobrega requested and received a new lawyer. *Mot. of Dismissal of Counsel & Appointment* (Docket # 117); *Oral Order* (Docket # 119). His motion for new trial is directed against the asserted failure of his trial counsel to properly develop a defense. He points to two evidentiary omissions: 1) his trial counsel did not question Officer Nadeau, the sniper, about his prior statement in which the officer allegedly wrote that he could not make out what was in Mr. Nobrega's hand the night of October 23, 2010, and 2) his trial counsel did not call Norella Meerzon as a witness. *Notice of Appeal* (Docket # 148); *Mot. for Audience* at 1-2 (Docket # 144). During his extensive discussion of the case on

October 11, 2011, Mr. Nobrega also asserted that he had wanted to take the stand and testify in his own defense but was prevented from doing so by his trial counsel.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). At the same time, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322. The First Circuit has explained that the "remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" *United States v. Andrade*, 94 F.3d 9, 14 (1st Cir. 1996) (quoting *United States v. Indelicato*, 611 F.2d 376, 386 (1st Cir. 1979)). The standards for a Rule 33 motion are rigorous. *Rothrock*, 806 F.2d at 322 ("[A] trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached a different result"); *see United States v. Maldonado-Rivera*, 489 F.3d 60, 65-66 (1st Cir. 2007) (setting forth the criteria for granting a new trial based on new evidence); *United States v. Rivera Rangel*, 396 F.3d 476, 485-86 (1st Cir. 2005) (setting forth the criteria for a new trial based on a *Brady* violation).

**B.     Ineffective Assistance of Counsel**

Mr. Nobrega's motion for new trial under Rule 33 is really a claim of ineffective assistance of counsel under 28 U.S.C. § 2255. There is no claim that the evidence Mr. Nobrega says should have been presented is "newly discovered" within the meaning of Rule 33(b)(1). *United States v. Lenz*, 577 F.3d 377, 380 (1st Cir. 2009) (citing *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980) (setting forth standards for a claim of newly discovered evidence under Rule 33)). Mr. Nobrega filed his motion for new trial within seven days of the verdict and the Court can reach whether the "interest of justice" requires a new trial. FED. R. CRIM. P. 33(a). However, Mr. Nobrega does not claim that the jury verdict was against the weight of the evidence, *Tibbs v. Florida*, 457 U.S. 31, 38 n.12 (1982); *United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979), that there was any jury misconduct, *Mattox v. United States*, 146 U.S. 140, 150 (1892), that there was any prosecutorial or judicial misconduct, *United States v. Ayala-Garcia*, 574 F.3d 5, 19 (1st Cir. 2009), *United States v. Montas*, 41 F.3d 775, 779 (1st Cir. 1994), or that there was an error that would require reversal on appeal. 3 CHARLES ALAN WRIGHT & SARAH N. WELLING, FEDERAL PRACTICE AND PROCEDURE § 589 (4th ed. 2011) (discussing other grounds for a Rule 33 motion). Thus, there are no cognizable grounds for relief under Rule 33.

The First Circuit has pointed out that a "claim of ineffective assistance of counsel is customarily raised in a petition for postconviction relief." *Lenz*, 577 F.3d at 383 (citing 28 U.S.C. § 2255). Even assuming that the Court could consider Mr.

Nobrega's ineffective assistance of counsel claim under the "interest of justice" provision of Rule 33, Mr. Nobrega has not provided the evidentiary underpinnings for his claim. For example, Mr. Nobrega asserts that Detective Nadeau wrote a statement in which he said that he was unable to see what was in Mr. Nobrega's hand, a statement contrary to his trial testimony, and that the Detective was not cross-examined on the contradiction between his prior statement and his trial testimony in which he positively identified the object in Mr. Nobrega's hand as a Glock. But Detective Nadeau's prior written statement is not a part of the Court's record.

Similarly, Mr. Nobrega's overriding and earnestly-pressed contention is that his trial attorney should have called Norella Meerzon as a witness to lay bare her participation in these schemes against him. But at the October 7, 2011 hearing, the parties repeated their earlier belief that, if Ms. Meerzon had been called to testify, she intended to assert her Fifth Amendment right against self-incrimination and that the Government was unwilling to extend immunity to her. *See Def.'s Mot.* in Limine *to Have Ct. Inquire Whether Gov't' Witness Will Invoke Fifth Am. While Testifying* (Docket # 71). If so, Mr. Nobrega's repeated assertion that Ms. Meerzon should have been called as a witness collides with her right to remain silent and may explain trial counsel's strategic decision not to call her. In any event, there is no evidence from which the Court could determine what happened, other than the fact that Ms. Meerzon did not testify either for the Government or for Mr. Nobrega.

Finally, regarding Mr. Nobrega's insistence that he was deterred from testifying on his own behalf by his attorney, the trial record does not substantiate his allegations. After the Government rested, the Court and Mr. Nobrega engaged in a colloquy about his right to take the stand:

> The Court: Mr. Nobrega, I want you to know, as I'm sure you do, that you have a constitutional right to testify if you wish to do so. Do you understand you have that right?
>
> Mr. Nobrega: Yes, I do.
>
> ***
>
> The Court: Ms. Villa is very experienced in these matters, and you should listen carefully to her advice, but, ultimately, the choice as to whether to testify or not is yours, not hers. Do you understand?
>
> Mr. Nobrega: Yes.
>
> ***
>
> The Court: Mr. Nobrega, I'll ask you finally, do you wish to testify in this matter or do you not wish to testify?
>
> Mr. Nobrega: Not at this time.
>
> The Court: All right. Well, when you say not at this time, your lawyer is going to present - - she tells me - - one witness. Do you want to wait until he testifies before making a final decision as to whether you'll testify?
>
> Mr. Nobrega: No.
>
> The Court: All right. So when you say not at this time, you do not wish to testify at all; is that right?
>
> Mr. Nobrega: Correct.

*Tr. Vol. II* 222:14-225:4. To the extent there is evidence in the record on this point, the evidence tends to refute Mr. Nobrega's contentions.

13

In the absence of evidence to support his Rule 33 motion, the wiser course is to dismiss the motion without prejudice, making it clear that Mr. Nobrega may, if he chooses, seek post-conviction relief under 28 U.S.C. § 2255.

## III. CONCLUSION

The Court DISMISSES without prejudice Domingos Nobrega's Motion for New Trial (*Notice of Appeal*, Docket # 129) and his Motion to Seek Justice (Docket # 151).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 7th day of November, 2011