UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10-cr-00186-JAW |
| | ) | |
| DOMINGÓS NÓBREGA | ) | |

**ORDER ON GRAND JURY MOTIONS**

The Court denies a convicted defendant's motion for a transcript of a witness's testimony before a grand jury. The witness was not called to testify at trial, and the defendant has not demonstrated a compelling necessity or particularized need for the transcript that outweighs the public interest in grand jury secrecy.

**I.   BACKGROUND**

On May 24, 2011, after a two-day trial, a federal jury found Domingós Nóbrega guilty of being a felon in possession of a firearm. *Jury Verdict Form* (ECF No. 98). Pursuant to that jury verdict, on July 13, 2012, the Court sentenced Mr. Nóbrega to 120 months in prison, three years supervised release, and a $100 special assessment; the Court imposed no fine. *J.* (ECF No. 228). On May 20, 2014, the Court of Appeals for the First Circuit affirmed Mr. Nóbrega's conviction. *J.* (ECF No. 275) (*First Circuit J.*).

This Court previously observed that "Mr. Nóbrega has "never accepted the verdict and sentence and has pursued all conceivable avenues of relief . . . ." *Order on Def.'s Mots. for New Trial and New Sentencing* at 5 (ECF No. 281) (*Second New Trial Order*). He has filed numerous post-judgment motions that have resulted in a

number of court orders. *See Order on Mot. for New Trial* (ECF No. 157); *Order on Def.'s Mots.* (ECF No. 244); *Order Granting Mot. to Construe Rule 60(b) Mot. as a Mot. Pursuant to Section 2255* (ECF No. 266); *Recommended Decision on Rule 60(b) Mot. and Mot. to Construe Rule 60(b) Mot. as a 28 U.S.C. § 2255 Mot.* (ECF No. 267); *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 270); *Order Staying Mot. for Post-Conviction Relief* (ECF No. 278); *Second New Trail Order.*

On February 13, 2015, Mr. Nóbrega moved to compel the disclosure of grand jury material. *Mot. to Compel Production of Grand Jury Material (Fed. R. Crim. P. 6(e))* at 1-8 (ECF No. 283) (*Def.'s Grand Jury Mot.*). Mr. Nóbrega's reason for asking for the transcript was to prove his claim that his defense lawyer, Virginia Villa, was ineffective in representing him because she failed to subpoena as a trial witness Norella Meerzon, Mr. Nóbrega's former girlfriend. *Id.* at 1-2. He also asked for the transcript to demonstrate prosecutorial misconduct, asserting that the federal prosecutor allowed Ms. Meerzon to testify falsely before the grand jury in order to obtain an indictment against Mr. Nóbrega. *Id.*

On March 31, 2015, the Government responded to Mr. Nóbrega's motion to compel disclosure of grand jury material. *Gov't's Resp. to "Mot. to Compel Produc. of Grand Jury Material"* (ECF No. 286). The Government opposed the motion for essentially three reasons: first, Mr. Nóbrega "has yet to initiate a §2255 proceeding and this Court should exercise its discretion to deny his request before he does"; second, he "fails to establish good cause for the Court to order discovery"; and third, he "requests secret grand jury materials, but fails to establish a particularized need

2

for their disclosure." *Id.* at 4 (citations omitted). On April 29, 2015, this Court ordered that the Government produce a transcript of the grand jury testimony of Norella Meerzon. *Order on In-Camera Review of Select Grand Jury Test.* (ECF No. 295). The Government complied with that order on April 30, 2015, and the Court performed an in camera review of that transcript.

On May 4, 2015, the Court ordered Mr. Nóbrega to explain in further detail why he contends that he requires Ms. Meerzon's grand jury testimony. *Further Order on Grand Jury Test.* (ECF No. 297). On May 26, 2015, Mr. Nóbrega filed a response. *Mot. to Respond to Judge John A. Woodcock II Court Order, Dated on May 12th 2015, Respon[s]e by, Date May 27th 2015* (ECF No. 300) (*Def.'s Suppl.*).[1] On November 2, 2015, Mr. Nóbrega filed a motion for a "decision status" on the grand jury transcript order. *Decision Status on Grand Jury Tr. Order* (ECF No. 313) (*Def.'s Status Mot.*).

On November 17, 2015, the Government responded to Mr. Nóbrega's "decision status" motion. *Gov't's Resp. to Docket #313, "Mot. to Compel Produc. of Grand Jury Material"* (ECF No. 314). Holding to its position that Mr. Nóbrega is not entitled to grand jury transcripts, the Government pointed out that Attorney Villa was not deficient for failing to challenge the indictment as "there was no procedural method for doing so." *Id.* at 3. Moreover, it asserted Attorney Villa's supposed deficiency could not have prejudiced Mr. Nóbrega's trial, given Ms. Meerzon did not testify at

---

[1] Because Mr. Nóbrega titled his response to the court order dated May 4, 2015 as a motion, the docket reflects his response as a motion. It is not. It is a response to the order dated May 4, 2015. The Court has considered the contents of the filings, but not as a motion, and it DISMISSES without prejudice Mr. Nóbrega's motion to respond to Judge John A. Woodcock II Court Order, Dated on May 12, 2015, Respon[s]e by Date May 27th, 2015.

trial and so could not have been impeached using the grand jury testimony. *Id.* at 3-4.  Finally, even if Ms. Meerzon did lie before the grand jury, "[i]t had nothing to do with the abundant independent evidence of Nobrega's guilt that was adduced at trial." *Id.* at 4.

## II.    DISCUSSION

### A.    Grand Jury Secrecy

In 1943, the United States Supreme Court described the secrecy of grand jury proceedings to be "indispensable." *United States v. Johnson*, 319 U.S. 503, 513 (1943). Noting that the grand jury is "part of the federal constitutional system," the *Johnson* Court explained that grand jury secrecy is "as important for the protection of the innocent as for the pursuit of the guilty." *Id.*  In *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), the Supreme Court further explained that grand jury secrecy may not be broken "except where there is a compelling necessity." *Id.* at 682. To gain access to grand jury information, the movant must show "a much more particularized, more discrete showing of need is necessary to establish 'good cause.'" *Id.* at 683.  In 1979, the Supreme Court expanded upon the reasons for grand jury secrecy:

> [W]e have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we

4

> assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 218-19 (1979) (footnote omitted). According to the Supreme Court, to obtain transcripts of a grand jury proceeding, the movant must demonstrate that his need for the transcript is justified by a "particularized need" and "outweighs the public interest in secrecy." *Id.* at 222-23. Elsewhere, the Supreme Court has written that the "'indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity." *Procter & Gamble*, 356 U.S. at 682 (quoting *Johnson*, 319 U.S. 503 at 513).

Consistent with these principles, Federal Rule of Criminal Procedure 6(e) "codifies the traditional practice of grand jury secrecy. With specified exceptions, it prohibits grand jurors, interpreters, stenographers, operators of recording devices, typists, government attorneys, or any person to whom disclosure is made under paragraph (3)(A)(ii) from disclosing 'matters before the grand jury.'" *In re Grand Jury Proceedings, Miller Brewing Co.*, 687 F.2d 1079, 1088 (7th Cir. 1982). In fact, individuals who violate the secrecy of grand jury proceedings may be subject to criminal prosecution under 18 U.S.C. § 1503. *In re Grand Jury Proceedings*, 814 F.2d 61, 70 (1st Cir. 1987).

> **B.    Domingós Nóbrega's Justification for the Grand Jury Transcript**

In his motion, Mr. Nóbrega explains why he contends he requires a transcript of Norella Meerzon's grand jury testimony. First, he contends that Ms. Meerzon lied when she testified before the grand jury and that her lies led to his indictment. *Def.'s*

5

*Mot.* at 1-4.  Second, he argues that his trial defense counsel Virginia Villa should have subpoenaed Ms. Meerzon to testify at trial.  *Def.'s Mot.* at 1-3.  He says that her failure to do so represented ineffective counsel, and he needs the transcript to proceed with his pending petition under 28 U.S.C. § 2255.  *Id.* at 1-8.

In his supplemental filing, Mr. Nóbrega focused on Ms. Meerzon's actions that in his view led to his indictment and conviction.  *Def. Suppl.* at 1-6.  First, he says that Ms. Meerzon knew he was a felon because he had been convicted of assaulting a government official in 2007.  *Id.* at 2.  Despite his prohibited status, he says that Ms. Meerzon purchased firearms and brought them to their home.  *Id.* at 3.  Next, he says that Ms. Meerzon was guilty of providing a felon with a firearm after leaving it in his home and reporting to the police that he possessed it.  *Id.*  He maintains that Ms. Meerzon admitted loading the firearm before she left home, and he questions why she was not charged with violating 18 U.S.C. § 924(a)(2).  *Id.* at 3-4.  He faults Ms. Meerzon for failing to use a gun lock when she left home to file a report with the police.  *Id.* at 3.  Among other asserted misstatements by Ms. Meerzon, he asserts that she lied about his use of alcohol and drugs and about his abusing her.  *Id.* at 4.

      **C.**    **Norella Meerzon's Grand Jury Testimony, the Indictment, and Compelling Necessity**

A federal grand jury issued a one count indictment of Mr. Nóbrega on November 18, 2010 for an alleged violation of 18 U.S.C. § 922(g)(1) and (a)(2):

**COUNT ONE**

On about October 23-24, 2010, in the District of Maine, defendant

**Domingos NOBREGA also known as Shawn Alan NOBREGA**

6

> having been convicted in the Commonwealth of Virginia and the State of North Carolina of crimes which under the laws of the Commonwealth of Virginia and the State of North Carolina were then punishable by imprisonment for terms exceeding one year, specifically:
>
> 1. Assault with a Deadly Weapon Upon a Government Officer in violation of North Carolina Code General Statute 14-34.2 on or about August 13, 2001 in State of Carolina County of Alamance, General Court of Justice, Superior Court Division in Docket Number 00-CRS-57479, for which he received a sentence of 30 months probation and for which he received a probation revocation sentence of 16 to 20 months imprisonment on or about September 4, 2003;
>
> 2. Assault and Battery on a Police Officer in violation of Virginia Code Section 18.2-57 on or about March 7, 2004, in Commonwealth of Virginia Circuit Court of Pittsylvania County Case Number CR03000201-00 for which he received a sentence of 5 years imprisonment with all but 6 months suspended,
>
> Knowingly possessed in and affecting commerce the following firearm:
>
> - A Glock Model 17, 9mm handgun bearing serial number PHM383; In violation of Title 18, United States Code, Sections 922(g)(1), and 924(a)(2).

*Indictment* (ECF No. 16). As issued, the indictment focused on Mr. Nóbrega's alleged possession of a firearm on two days: October 23 and October 24, 2010. *Id.* at 1.

The trial evidence revealed that on May 10, 2010, Ms. Meerzon purchased a Glock Model 17, 9 mm handgun bearing serial number PHM383. Ms. Meerzon and Mr. Nóbrega were living together in Bangor in October 2010, when they were visited by a number of guests from New York City. At trial the Government called as witnesses a number of the New York City guests, including Eric Babilonia, Crystal Schroeder, Christopher Sherrill, Justina Cipriano, and Jason Rodriguez. The Government also called a number of law enforcement officers. Some of the New York

7

City witnesses and one of the law enforcement officers testified that they witnessed Mr. Nóbrega in possession of a firearm.

Ms. Meerzon's grand jury testimony falls into two categories: 1) information irrelevant to the charge, and 2) information relevant to the charge. The Court declines to order revelation of the contents of Ms. Meerzon's grand jury testimony about events irrelevant to the charge in the November 18, 2010 indictment. Regarding testimony relevant to the indicted charge, the Court compared Ms. Meerzon's testimony with the testimony of the trial witnesses, and the Court declines to order the disclosure of the Meerzon grand jury transcript because her testimony is consistent with the testimony of other witnesses and with exhibits admitted at trial. Therefore, because Mr. Nóbrega failed to demonstrate a "compelling necessity," *Procter & Gamble Co.*, 356 U.S. at 682, or "particularized need" that "outweighs the public interest in secrecy," *Douglas Oil Co.*, 441 U.S. at 222-23, he is not entitled to the Meerzon transcript.

He is also not entitled to a transcript of Ms. Meerzon's grand jury testimony because Mr. Nóbrega is really seeking to nullify the indictment itself. This he may not do, particularly after a trial jury has found him guilty beyond a reasonable doubt of the charge that the grand jury found was supported by probable cause. *See Costello v. United States*, 350 U.S. 359, 359-63 (1956) (answering in the affirmative the question "May a defendant be required to stand trial and a conviction be sustained where only hearsay evidence was presented to the grand jury which indicted him?").

### D. Other Contentions

In arguing his right to the Meerzon transcript, Mr. Nóbrega made several points of law. The Court will briefly address some of those points in order to respond to Mr. Nóbrega's arguments.

#### 1. The Jencks Act Claim

Mr. Nóbrega claims that he is entitled to a transcript of Norella Meerzon's grand jury testimony under the Jencks Act, 18 U.S.C. § 3500. *Def.'s Status Mot.* at 1. He is not. The Jencks Act provides in part:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of a subp[o]ena, discovery, or inspection <u>until said witness has testified on direct examination in the trial of the case</u>.

18 U.S.C. § 3500(a) (emphasis supplied). As Ms. Meerzon did not testify in Mr. Nóbrega's trial, the Jencks Act does not apply.

#### 2. Virginia Villa's Presence at the Grand Jury Testimony of Norela Meerzon

In his May 26, 2015 filing, Mr. Nóbrega asserts that his lawyer, Attorney Villa, was present during Ms. Meerzon's grand jury testimony:

> VIRGINIA G. VILLA was in the GRAND JURY hearing NOVEMBER 18th, 2010 as the PETITIONER'S lawyer/attorney, VILLA did not object or file a proper evidentiary hearing over these attached statements along with the statements from the GRAND JURY Transcript, as well as the falsified 911 call filed by SGT E. POTTER from the BANGOR POLICE DEPARTMENT.

*Def.'s Suppl.* at 2. Mr. Nóbrega is in error. Attorney Villa was not present during the grand jury proceedings. The United States Supreme Court has written:

9

> A witness before a grand jury cannot insist, as a matter of constitutional right, on being represented by counsel. Under settled principles the witness may not insist upon the presence of his attorney in the grand jury room.

*United States v. Mandujano*, 425 U.S. 564, 581 (1976) (internal punctuation and citations omitted). A witness before a grand jury has the right to consult with counsel, but that lawyer must remain outside the grand jury room. *In re Grand Jury Proceedings*, 859 F.2d 1021, 1024 (1st Cir. 1988).

### 3. Norela Meerzon as a Trial Witness

Ever since the trial, Mr. Nóbrega has bitterly complained that neither the Government nor his defense lawyer called Norela Meerzon as a witness. *Notice of Mot. and Mot. for Relief from a Final J. or Order Based on Fundamental Defects Inherently Resulted in a Complete Miscarriage of Justice Pursuant to Rule 60(b)(1)(3)(6), (c)(1)(2), and (d)(1)* at 1-4 (ECF NO. 259); *Pro Se Mot. for Post-Conviction Relief* at 2-4 (ECF No. 276). He repeats this contention in his pending motion:

> V. Villa knew that NORELLA MEERZON had to be Subpoenaed to testify (It was legally her Gun) at Trial, May 23, 2011, because the Petitioner's whole defense is wrapped around her testimony and/or statements being heard in court. And how not subpoenaing NORELLA MEERZON prejudiced the Petitioner and violated his 5th & 6th Amendment Right to Trial. The Grand Jury Transcript[]s show NORELLA MEERZON's full involvement and why she is the Adverse Witness, NORELLA MEERZON's testimony is the key factor the Trial Jury needed to hear, along with her Statements made to the Prosecutor, A.T.F., Police and NORELLA MEERZON's Personal Correspondence to the Petitioner, which does show a[n] inconsistent and false statement made to the Grand Jury. V. Villa was fully aware of the facts and did nothing.

> The Petitioner's whole defense is and/or was based on these material fact[s] and if NORELLA MEERZON would have tried to invoke her 5th Amendment Right while in Court in front of the Trial Jury, the Petitioner would then have the Right to Read out loud to the Jury all of NORELLA MEERZON's statement[s] made to the Bangor Police, A.T.F., Prosecutor, Grand Jury and her Love Letters to the Petitioner.

*Def.'s Mot.* at 2. The Court has previously addressed Mr. Nóbrega's arguments concerning Norella Meerzon. *Order on Mot. for New Trial* at 7-8, 12 (ECF No. 157); *Order on Def.'s Mots. for New Trial and New Sentencing* at 8-11 (ECF No. 281).

There are a number of reasons that whatever Ms. Meerzon did or did not do would not be a defense to the criminal charge against Mr. Nóbrega. First, as the Court understands it, one of Mr. Nóbrega's main contentions is that since the Government chose to prosecute him for possession of a firearm, the Government should have prosecuted Ms. Meerzon too for violating the law when she purchased the firearm and allowed him to possess it. *Def.'s Suppl.* at 4 ("In fact she should have been charged by providing a FELON with a FIREARM"). However, whether Ms. Meerzon could have been prosecuted has nothing to do with whether Mr. Nóbrega committed a crime by possessing a firearm after having been convicted of a felony. It is no defense to a criminal charge to say that someone else committed another crime.

Second, Mr. Nóbrega believes that the Government should have subpoenaed Ms. Meerzon as a witness. Attorney Villa raised the question as to whether the Government would call Ms. Meerzon as a witness at trial by filing a pretrial motion in limine on May 16, 2011. *Mot. in Limine to Have Ct. Inquire Whether Gov't Witness Will Invoke Fifth Amendment While Testifying* (ECF No. 71) (*Def.'s Limine Mot.*). The Government responded on May 17, 2011 and indicated that Ms. Meerzon was

11

represented by Steve Smith, a local criminal defense attorney, and that it did not object to the Court conducting an inquiry as to whether, if called, Ms. Meerzon would assert the Fifth Amendment. *Gov't's Resp. to Def.'s Mot. in Limine to Have the Ct. Inquire Whether Gov't Witness Will Invoke Fifth Amendment While Testifying* (ECF No. 76). On May 23, 2011, just before jury selection, the Court held a conference of counsel and asked about the status of Ms. Meerzon's testimony. *Tr. of Proceedings* 3:3-25 (ECF No. 247) (*Conference of Counsel*). At the conference of counsel, the Government represented that it had elected not to call Ms. Meerzon as a witness. *Id.* This obviated the pending motion in limine.

After the Government rested its case, the defense called one witness, not Ms. Meerzon. *Partial Tr. of Proceedings* 226:8-237:18 (ECF No. 137) (*Jury Trial Tr. II*). Mr. Nóbrega claims that Attorney Villa should have subpoenaed Ms. Meerzon and presented her as a witness at his trial. When Attorney Villa filed the motion in limine, she indicated that she believed that Ms. Meerzon would invoke her Fifth Amendment right not to testify if called as a witness. *Def.'s Limine Mot.* at 1-2. Indeed, Attorney Villa noted in her motion that Ms. Meerzon had used a Maine address in purchasing the firearm, when she was not then a Maine resident, and this inaccuracy exposed her to federal prosecution. *Id.* at 1. In his motion, Mr. Nóbrega says that Attorney Villa should have nevertheless forced Ms. Meerzon to take the stand in front of the jury, should have asked her questions, should have forced her to assert the Fifth Amendment, and should have introduced prior statements, including her grand jury testimony to undercut her credibility. *Def.'s Mot.* at 2.

But, as Attorney Villa recognized in her motion in limine, the procedure that Mr. Nóbrega now proposes would have been of questionable propriety. The First Circuit has observed that the invocation of the Fifth Amendment by a witness at trial "could lead a jury to draw impermissible inferences from which neither side has a right to benefit." *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973). If Ms. Meerzon refused to testify, her prior statements would not have been admissible under the rules of evidence during the trial.

Finally, Mr. Nóbrega raised a similar argument about Norella Meerzon before the First Circuit Court of Appeals, and on May 20, 2014, the appellate court rejected it. *First Circuit J*. This Court must accept the teachings of the First Circuit and does so here.

## III.  CONCLUSION

The Court DENIES Domingós Nóbrega's Motion to Compel Production of Grand Jury Material (Fed. R. Crim. P. 6(e)) (ECF No. 283) and DISMISSES as moot his motion entitled Decision Status on Grand Jury Transcript Order (ECF No. 313). Finally, the Court DISMISSES without prejudice Domingós Nóbrega's Motion to Respond to Judge John A. Woodcock II Court Order, Dated on May 12, 2015, Respon[s]e by Date May 27th, 2015 (ECF No. 300) because the Court has treated the filing as a memorandum, not a motion.

SO ORDERED.

                                              <u>/s/ John A. Woodcock, Jr.</u>
                                              JOHN A. WOODCOCK, JR.
                                              UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2015