UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:10-cr-00186-JAW |
| | ) | |
| DOMINGÓS NÓBREGA | ) | |

**ORDER ON MOTION TO COMPEL U.S. GOVERNMENT TO PRODUCE COURT RECORD OF INVOKE/ASSERT**

A convicted defendant seeks to compel the Government to produce court records of a certain witness asserting her Fifth Amendment right to remain silent. However, no such records exist because the witness did not appear either at the defendant's trial or at his sentencing hearing to testify. The witness did not appear at trial because neither the government nor the defendant called her as a witness. The witness did not appear at the sentencing hearing because the defendant was unable to subpoena her for the hearing. Informed that the witness would assert her Fifth Amendment right of silence at the sentencing hearing, the Court allowed the defendant to introduce reports of the witness's prior statements in lieu of her testimony. Contrary to the defendant's contention, in these circumstances, the witness was not obligated to actually appear in court to assert her Fifth Amendment rights. The Court denies the defendant's motion to compel the records.

**I.   BACKGROUND**

On May 24, 2011, following a two-day trial, a federal jury found Domingós Nóbrega guilty of being a felon in possession of a firearm. *Jury Verdict Form* (ECF

No. 98). Pursuant to that jury verdict, on July 13, 2012, the Court sentenced Mr. Nóbrega to 120 months in prison, three years supervised release, and a $100 special assessment; the Court imposed no fine. *J.* (ECF No. 228). On May 20, 2014, the Court of Appeals for the First Circuit affirmed Mr. Nóbrega's conviction. *J.* (ECF No. 275) (*First Circuit J.*).

Mr. Nóbrega has "never accepted the verdict and sentence and has pursued all conceivable avenues of relief…" *Order on Def.'s Mots. for New Trial and New Sentencing* at 5 (ECF No. 281) (*Second New Trial Order*); *Order on Grand Jury Mots.* at 1–2 (ECF No. 320). He has filed numerous post-judgment motions, and the Court has issued numerous orders. *See Order on Mot. for New Trial* (ECF No. 157) (*First New Trial Order*); *Order on Def.'s Mots.* (ECF No. 244); *Order Granting Mot. to Construe Rule 60(b) Mot. as a Mot. Pursuant to Section 2255* (ECF No. 266); *Recommended Decision on Rule 60(b) Mot. and Mot. to Construe Rule 60(b) Mot. as a 28 U.S.C. § 2255 Mot.* (ECF No. 267); *Order Affirming the Recommended Decision of the Magistrate Judge* (ECF No. 270); *Order Staying Mot. for Post-Conviction Relief* (ECF No. 278); *Second New Trial Order*; *Order on In-Camera Review of Select Grand Jury Test.* (ECF No. 295); *Further Order on Grand Jury Test.* (ECF No. 297); *Order in Resp. to Def.'s Mot. to Respond to Judge John A. Woodcock II on In-Camera Review of Select Grand Jury Test.* (ECF No. 299); *Order on Grand Jury Mots.*; *Order on Motion for Reconsideration of Order on Grand Jury Motions* (ECF No. 341).

On July 28, 2016, Mr. Nóbrega moved to compel the Government to produce court records of Norella Meerzon asserting her Fifth Amendment right to remain

silent "in front of a [j]udge and a [s]tenographer for the Court." *Mot. to Compel U.S. Gov't to Produc. Ct. R. of Invoke/Assert* at 1 (*Pl.'s Mot.*). In his motion, Mr. Nóbrega asserts that if the Government cannot produce the court records, then the Government committed fraud, and the Court should vacate his sentence. *Id.* at 1–2.

On August 17, 2016, the Government responded to Mr. Nóbrega's motion to compel the court records. *Gov't's Resp. to "Mot. to Compel U.S. Gov't to Produc. Ct. R. of Invoke/Assert"* (ECF No. 354) (*Gov't's Opp'n*). The Government opposes the motion for two reasons: first, the Government asserts that "nothing in the record suggests that Meerzon ever appeared before the Court to plead the Fifth Amendment." *Id.* at 7. Accordingly, the Government insists that it "cannot be expected to produce a record of an event that never occurred." *Id.* Second, the Government clarifies that "Meerzon did not personally invoke the Fifth Amendment. Rather, the attorney who represented her told the AUSA twice that Meerzon would not testify absent a grant of immunity." *Id.* The Government maintains that Ms. Meerzon's lawyer "had a good faith basis for making that representation." *Id.* (citing *Maness v. Meyers*, 419 U.S. 449, 467 (1975)).

Mr. Nóbrega replied on September 6, 2016. *Mot. to Respond to U.S. Gov't Resp. Filed Doc. 354 on 08/17/16, a Resp. to Pet'rs' Mot. to Compel U.S. Gov't* (ECF No. 360) (*Pl.'s Reply*).[1] His reply seizes on the Government's acknowledgment that Ms.

---

[1] On September 2, 2016, Mr. Nóbrega filed a second motion that replicates his first motion to compel the court records. *Second Mot. to Compel U.S. Gov't to Produc. Ct. R. of Invoke/Assert of Witness*. This second motion does not mention the Government's August 17 response. Then, on September 6, 2016, Mr. Nóbrega filed a reply to the Government's response. *Mot. to Respond to U.S. Gov't Resp. Filed Doc. 354 on 08/17/16, a Resp. to Pet'rs' Mot. to Compel U.S. Gov't* (ECF No. 360) (*Pl.'s Reply*). In the reply, Mr. Nóbrega explains that the Government sent its response to his old address, even though Mr. Nóbrega notified the Clerk of Court of his address change. As a result, he

Meerzon did not personally invoke the Fifth Amendment. Mr. Nóbrega highlights that Ms. Meerzon never asserted her Fifth Amendment rights in person or by means of a notarized legal document. *Id.* at 3. He further asserts that Ms. Meerzon's attorney, Stephen Smith, "did not or does not have proper [j]urisdiction" to assert Ms. Meerzon's Fifth Amendment rights because he did not have written, notarized authority. *Id.* Mr. Nóbrega contends that the Government merely assumed that Ms. Meerzon asserted her Fifth Amendment rights, and that the Court should have called Ms. Meerzon to testify to determine if she actually wished to assert her Fifth Amendment rights. *Id.* at 4, 7.

## II.   DISCUSSION

### A.   Norella Meerzon as a Trial Witness

It has long been Mr. Nóbrega's strongly-held belief that Norella Meerzon, his former girlfriend, should have been called as a witness to testify at his trial. In his June 1, 2011 motion for new trial, Mr. Nóbrega argued that Ms. Meerzon had set him up for the criminal charge because she knew that as a felon, he could not possess a firearm, yet she bought a 9-millimeter firearm on May 5, 2010, snuck it into their Bangor home, and hid it in their house without his knowledge. *See First New Trial Order* at 7. He says that Ms. Meerzon's purchase of the firearm was itself a violation of federal criminal law because she was not a resident of Maine at the time of her purchase. *Id.* at 7–8. Furthermore, Mr. Nóbrega contends that, having hidden the firearm in the house, Ms. Meerzon contacted the Bangor Police Department and made

---

did not receive the Government's response until after he filed his second motion. *Id.* at 1. The Court therefore dismisses the second motion as moot.

a false report that Mr. Nóbrega possessed a firearm, a report that ultimately resulted in his arrest, prosecution, and conviction. *Id.* at 8. He has repeatedly expressed frustration that the federal prosecutor decided not to press charges against Ms. Meerzon for her allegedly criminal actions. *Id.* Mr. Nóbrega says that Ms. Meerzon's motivation was to oust him from their Bangor home, which they had owned jointly. *Id.*

Mr. Nóbrega has raised the Norella Meerzon issue a number of times, and the Court has already addressed his contentions at some length. *See First New Trial Order* at 7–8, 12 (ECF No. 157); *Second New Trial Order* at 8–11 (ECF No. 281); *Order on Grand Jury Mots.* at 11–13 (ECF No. 320). The Court has explained that before trial, on May 16, 2011, defense attorney Virginia Villa filed a motion to determine whether Ms. Meerzon was going to assert the Fifth Amendment and refuse to testify. *Mot. in Limine to Have Ct. Inquire Whether Gov't Witness Will Invoke Fifth Am. While Testifying* (ECF No. 71). In the motion, Attorney Villa stated that "[i]t is believed that Ms. Meerzon may invoke her Fifth Amendment right should she be called as a witness at trial." *Id.* at 1. If so, she noted that it would be improper to call Ms. Meerzon as a witness in front of the jury to assert the Fifth Amendment because it "could lead a jury to draw impermissible inferences from which neither side has a right to benefit." *Id.* at 1–2 (quoting *United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973)). In fact, Attorney Villa wrote that having a government witness invoke the Fifth Amendment "may result in reversible error." *Id.* at 2 (citing *Namet v. United States*, 373 U.S. 179 (1963)). She said the "better practice" is for the

Court to address Ms. Meerzon "outside the hearing of the jury before her testimony." *Id.*

After Attorney Villa filed the motion in limine, on May 17, 2011, the Government responded with a memorandum. *Gov't's Resp. to Def.'s Mot. in Limine to Have the Ct. Inquire Whether Gov't Witness Will Invoke Fifth Am. While Testifying* (ECF No. 76). In the Government's response, it said it had contacted Attorney Stephen Smith, a local criminal defense lawyer who represented Ms. Meerzon, and that it had no objection to the Court conducting an inquiry of Ms. Meerzon to determine whether she would assert the Fifth Amendment privilege if called to testify. *Id.* at 1.

On May 23, 2011, at a conference of counsel, the Court raised the issue of Ms. Meerzon's testimony and agreed that it would be appropriate for the Court to allow an examination of Ms. Meerzon to determine whether she would assert the Fifth Amendment. *Tr. of Proceedings* 3:25 (ECF No. 247). The Assistant United States Attorney (AUSA), however, immediately represented that he was not going to call Ms. Meerzon as a government witness. *Id.* With this representation, because the Government elected not to call Ms. Meerzon as a witness, there was no immediate need to determine whether she would assert the Fifth Amendment if she were called to testify.

The only remaining possibility was that Mr. Nóbrega could call Ms. Meerzon as a defense witness, but he did not. *See Order on Grand Jury Mots.* at 12 ("After the Government rested its case, the defense called one witness, not Ms. Meerzon"). Based

6

on its earlier statement, if Mr. Nóbrega had subpoenaed Ms. Meerzon as a defense witness, the Court would have allowed an examination outside the presence of the jury to determine whether Ms. Meerzon was going to invoke her Fifth Amendment right not to testify. However, as neither the Government nor Mr. Nóbrega ever offered Ms. Meerzon as a witness and never brought her to the courtroom, the Court was not in a position to ask her whether she wished to invoke her Fifth Amendment right to remain silent.

Based on this record, it is undisputed that Ms. Meerzon did not actually testify at Mr. Nóbrega's trial. Indeed, Mr. Nóbrega's appeal to the First Circuit focused in part on the fact that neither party called Ms. Meerzon to testify as a witness. *First Circuit J.* at 1. Because Ms. Meerzon was not called to testify, there would be no court record of her asserting her Fifth Amendment rights.

Yet Mr. Nóbrega also argues that the Court should have inquired whether Ms. Meerzon actually intended to assert her Fifth Amendment rights instead of simply assuming so based on her attorney's representations. However, it would not have been proper for the Court to require Ms. Meerzon to appear before it and subject her to a Fifth Amendment inquiry when neither the Government nor Mr. Nóbrega's attorney wanted her to testify. If either the AUSA or Ms. Villa had subpoenaed Ms. Meerzon, she would have been at least required to appear in court, and the Court would have held a hearing as to whether she would testify or assert her Fifth Amendment right to silence. But as neither party brought her to court, the Court could not and did not hold the hearing.

7

The bottom line has not changed from the multiple earlier orders on this issue. The Court is unable to require the Government to produce something that does not exist: namely, a transcript of a hearing that never took place.

**B.     Norella Meerzon as a Witness at the Sentencing Hearing**

In his reply, Mr. Nóbrega raised a new issue: whether Ms. Meerzon should have appeared as a witness at his sentencing hearing on July 13, 2012. *Reply* at 5–6, 8. At the hearing, Mr. Nóbrega's then attorney Jeffery Silverstein informed the Court that he had attempted to subpoena Ms. Meerzon, but the U.S. Marshal's Office had been unable to locate her. *Tr. of Proceedings, Sentencing Proceedings* 17:14–18:20 (ECF No. 245). Attorney Silverstein acknowledged that if she had appeared, she "may have declined to testify and asserted some sort of privilege." *Id.* 18:13–15. Attorney Silverstein also admitted that Mr. Nóbrega was "prepared to proceed forward by admitting the statements she gave during the course of various interviews with law enforcement and other case agents for the purposes of proving some of the underlying things that he wished to establish had she been present." *Id.* 18:6–11. Attorney Silverstein further conceded that if Ms. Meerzon appeared and asserted the Fifth Amendment, Mr. Nóbrega would have used Ms. Meerzon's prior statements in any event. *Id.* 18:12–20.

To resolve the issue, the Court gave counsel time to contact Attorney Stephen Smith, Ms. Meerzon's attorney, to determine whether—if she appeared at Mr. Nóbrega's sentencing hearing—he would recommend that she assert the Fifth

Amendment. *Id.* 19:18–20:3. The AUSA contacted Attorney Smith, and the AUSA reported:

> Your Honor, I've been advised by my office that Attorney Stephen Smith had been contacted, indicated that he was on his way to state district court for a brief hearing and could be reached there, if necessary, at some point. He was asked whether he would have allowed Norella to testify— that is Norella Meerzon—to testify if she had appeared today, and his response was absolutely not.

*Id.* 42:7–13. In light of the AUSA's representation, the Court concluded that it would go forward with Mr. Nóbrega's sentencing hearing for two reasons: first, the Court concluded that even if Ms. Meerzon were present, she would likely follow the advice of her attorney and invoke the Fifth Amendment, and second, the Court allowed Mr. Nóbrega to admit into evidence reports of Ms. Meerzon's prior statements to law enforcement in lieu of her testimony. *Id.* 42:14–43:20. Accordingly, even though Mr. Nóbrega was unable to present Ms. Meerzon as a witness at the sentencing hearing, he was able to introduce her prior statements into evidence.

In these circumstances, the Court rejects Mr. Nóbrega's contention that Attorney Smith acted improperly. Mr. Nóbrega erroneously assumes that Ms. Meerzon was under subpoena to appear at the sentencing hearing, but there is no evidence in this record that the U.S. Marshal's Office successfully served a witness subpoena on Ms. Meerzon. Instead, the Court had the AUSA contact Ms. Meerzon's attorney and determine whether he would advise her to waive her Fifth Amendment privilege if she were subpoenaed, and Attorney Smith emphatically confirmed that he would advise her against testifying. Moreover, the Court allowed Mr. Nóbrega to admit Mr. Meerzon's prior statements into evidence, which is functionally the result

9

that would have obtained had she been present and asserted her Fifth Amendment rights.

Nor has Mr. Nóbrega explained what Ms. Meerzon would have testified to as a witness at the sentencing hearing that Attorney Silverstein did not bring to the Court's attention. At the sentencing hearing, Attorney Silverstein made an extensive presentation as to what Ms. Meerzon would have said, if she had been called as a witness at the sentencing hearing, based on Ms. Meerzon's prior statements to law enforcement, which were admitted into evidence. *Id.* 46:1–48:25. Mr. Nóbrega was therefore able to present and argue at the sentencing hearing Ms. Meerzon's version of the events.

Finally, the Court rejects Mr. Nóbrega's contention that Attorney Stephen Smith somehow acted inappropriately by informing the Court that he had advised Ms. Meerzon not to testify at the sentencing hearing. Indeed, Mr. Nóbrega's underlying charge has been that Ms. Meerzon committed a crime when she procured the 9-millimeter firearm and, if he is right, Ms. Meerzon would have been wise to assert her Fifth Amendment rights, the same rights that Mr. Nóbrega asserted at his trial. In fact, in attempting to determine whether to continue the sentencing hearing, the Court asked the AUSA to contact Attorney Smith and find out whether his client was likely to testify if she were called to testify at a rescheduled sentencing hearing. The Court is unclear why Mr. Nóbrega believes that Attorney Smith acted improperly in responding to the Court's inquiry or in giving this advice to Ms. Meerzon. In any event, the Court disagrees with Mr. Nóbrega that Attorney Smith acted improperly.

10

### III. CONCLUSION

The Court DENIES Domingós Nóbrega's Motion to Compel U.S. Government to Produce Court Record of Invoke/Assert (ECF No. 348). The Court DISMISSES Mr. Nóbrega's Second Motion to Compel U.S. Government to Produce Court Record of Invoke/Assert of Witness (ECF No. 359) as duplicative and therefore MOOT.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of October, 2016