UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| DOMINGÓS NÓBREGA, | ) | |
|---|---|---|
| | ) | |
| Petitioner | ) | |
| | ) | 1:10-cr-00186-JAW |
| v. | ) | 1:15-cv-00134-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER AFFIRMING RECOMMENDED DECISION
ON 28 U.S.C. § 2255 MOTION**

A federal prisoner moves the Court to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The United States Magistrate Judge withheld ruling on one issue because the United States Supreme Court was considering it in a different case but otherwise recommended dismissing the motion. The Court reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; the Court has made a de novo determination of all matters adjudicated by the Magistrate Judge's Recommended Decision; and the Court concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, and determines that no further proceeding is necessary. In light of the Supreme Court's recent resolution of the remaining issue regarding the residual clause of the guideline provision defining a crime of violence, the Court also denies the movant's remaining motions.

## I. Procedural Background

On May 23 and May 24, 2011, Movant, Domingós Nóbrega, was tried and convicted of being a felon in possession of a firearm, pursuant to 18 U.S.C. §§ 922(g)(1), 924(a)(2). *Min. Entry* (ECF Nos. 91, 93). On July 13, 2012, the Court sentenced Mr. Nóbrega to a period of incarceration of 120 months. *J.* (ECF No. 228). Mr. Nóbrega appealed, and the First Circuit affirmed the conviction and sentence on May 20, 2014. *J. of the United States Court of Appeals for the First Circuit* (ECF No. 275).

On April 13, 2015, Mr. Nóbrega filed a motion to vacate, set aside, or correct his sentence. *Mot. Under 28. U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (ECF No. 287). On August 26, 2015, the Government filed a response. *Gov't's Mot. for Summary Dismissal of Def.'s Mot. Under 28 U.S.C. § 2255* (ECF No. 307). Mr. Nóbrega filed his reply on November 23, 2015. *Pet'r's Resp. to the Gov't's Resp. to Pet'r's 28 U.S.C. § 2255* (ECF No. 316).

On May 31 and June 6, 2016, Mr. Nóbrega filed a supplemental motion challenging on vagueness grounds the validity of the then-operative sentencing guideline provisions the Court used to calculate his offense level, U.S.S.G. § 2K2.1(a)(2) and § 4B1.2(a)(2), in light of a new case, *Johnson v. United States*, 576 U.S. ___, 137 S. Ct. 886 (2015) (*Johnson II*), which the Supreme Court made effective retroactively. *Mot. for Notice of Applicability of New Retroactive Case, U.S. v. Johnson* (ECF No. 335); *Mot. to Vacate Sentence Enhancement 2K2.1(a)(2) with Priors, by Johnson v. U.S.* (2015) (ECF No. 336).

On June 29, 2016, the Government moved to stay resolution of Mr. Nóbrega's habeas motion pending the outcome of *Beckles v. United States*, 580 U.S. ___, 137 S. Ct. 886 (2017), a case then before the Supreme Court regarding the impact of *Johnson II*. *Mot. to Stay* (ECF No. 343). On July 6, 2016, the Court partially denied the Government's motion to stay because Mr. Nóbrega raised other arguments beyond the *Johnson II* issue. *Order Denying in Part the United States of America's Mot. to Stay* (ECF No. 344). On the same day, the Magistrate Judge granted the remainder of the motion to stay Mr. Nóbrega's supplemental motion pending the outcome of *Beckles*. *Order on Mot. to Stay* (ECF No. 346).

On July 25, 2016, Mr. Nóbrega filed a motion to lift the stay, contending that he would be eligible for immediate release if he were able to prevail on the *Johnson II* issue. *Mot. for Expedited Consideration for Relief, from Stay, Document 346, 344* (ECF No. 347). On August 30, 2016, the Magistrate Judge granted relief from the stay to permit briefing on the *Johnson II* issue. *Order on Mot. for Relief from Stay* (ECF No. 358). On September 28, 2016, the Government filed a response to the supplemental motion. *Gov't Resp. to Claim Based on Johnson II* (ECF No. 361). Mr. Nóbrega filed replies on October 14 and October 17, 2016. *Mot. to Obj./Respond to the Resp't's Resp. to the Petitioner's Mot. to Vacate Sentence, Under Johnson (2015)* (ECF No. 364); *Suppl. Decl. of Aff. Of Affirmation and Affirmative Action of Domingós Nóbrega and Obj. to Resp't's Filed Sept. 28 Received Oct 11-16* (ECF No. 366).

On January 30, 2017, the Magistrate Judge issued his Recommended Decision on the issues contained in Mr. Nóbrega's initial habeas motion. *Recommended*

3

*Decision on 28 U.S.C. 2255 Mot.* (ECF No. 369) (*Recommended Decision*). The Magistrate Judge withheld recommendation on the *Johnson II* question, reinstating the stay of that issue pending the outcome in *Beckles*. *Order Granting Request for Stay* (ECF No. 368). Mr. Nóbrega filed his objections to the Recommended Decision on February 14 and February 24, 2017. *Mot. Pursuant 28 U.S.C. 636(b)(1)(B), Objs. To Magistrate Judge's Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 373) (*Pet'r's Obj.*); *Mem. in Response to 2255 Recommendation* (ECF No. 376). The Government chose not to respond to Mr. Nóbrega's objections.

Mr. Nóbrega also objected to the Magistrate Judge's decision to withhold recommendation on the *Johnson II* question. *Mot. to Obj. to Gov't. Mot. to Stay, Doc 347 & 358 Prejudice Towards Pet'r, Release from a Illegal Sentence* (ECF No. 370). He submitted a series of additional filings on the *Johnson II* issue, making further arguments and citing additional cases. *Mot. of Notice to Apply. U.S.S.C. Dimaya v. Lynch* (ECF No. 380); *Letter* (ECF No. 383); *Applying Johnson II 803 F.3d 110, 1120 (9th Cir 2015) to Pet'r's Case as Merit, to Aid in his Resentencing Mots.* (ECF No. 389). The Government responded to several of these filings on June 8, 2017. *Gov't's Mot. for Summ. Dismissal of Def.'s Claimed Entitlement to ReliefPursuant to Johnson v. United States* (ECF No. 388). Mr. Nóbrega filed a reply on July 7, 2017. *Affidavit Entry Mot. to Resp. to Gov't's Resps. To File No.: 369 & 380 Johnson v. U.S. & Dimaya v. Lynch & 2255 Issue* (ECF No. 392). The Government rested its arguments on July 13, 2017. *Gov't's Resp. to Nóbrega's Filings that were Docketed on June 26, 2017 and July 7, 2017* (ECF No. 394). Finally, on December 18, 2017 and January 8, 2018, Mr.

4

Nóbrega submitted additional notices. *Notice to Ct. of all Priors Used in this Case are Null & Void, They are all Over 15 Year[s] Old, Order PSI to be Reclassified to Reflect* (ECF No. 395); *Notice, U.S. Probation Parol[e]/Halfway House Legal Contracts Were Given to Pet. to Place a Mark on Them by Threat, Duress, Coercion, Contracts Null-in-Void* (ECF No. 396). The Government has not responded to either notice.

## II. Discussion

### A. Objections to the Recommended Decision

Most of Mr. Nóbrega's objections reiterate the arguments the Magistrate Judge rejected with clear and thoughtful reasons. For example, Mr. Nóbrega writes extensively on the issue of a grand jury witness because "without this witness the [Government] would not [have] been able to obtain the indictment in this case and there would be no need for this 2255[.]" *Pet'r's Obj.* at 4-5. But as the Magistrate Judge explained, Mr. Nóbrega's trial counsel could not have been ineffective regarding the grand jury witness because defense counsel is not permitted to be present during the grand jury proceedings. *Recommended Decision* at 12.

At other places, Mr. Nóbrega argues about the truth of the underlying events or the sufficiency of the evidence but makes no connection to his legal claim of ineffective assistance of counsel beyond vague assertions, such as counsel "was prejudice toward the Petitioner's needs." *Pet'r's Obj.* at 7.

Mr. Nóbrega also repeats many assertions that the Court previously rejected, like the claim that federal criminal law applies only to commercial entities. *See id.* at 2. He also "objects to every word stated by [the] Magistrate Judge" and accuses

the Magistrate Judge of being the real criminal. *Id.* at 13 ("You are the real criminal and we are enemies").

In response to many of Mr. Nóbrega's objections, the Court has little to add to the Magistrate Judge's Recommended Decision. Some objections raise new arguments that Mr. Nóbrega did not adequately present to the Magistrate Judge. Under well-settled law, a court is not required to address issues not raised before the Magistrate Judge. *See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988) ("We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate"); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987) ("Parties must take before the magistrate[ ] not only their best shot but all of their shots") (internal quotation marks and citation omitted). Because Mr. Nóbrega remains incarcerated and should know that the Court considered his contentions, even though it has ruled against him, the Court offers the following discussion by way of further explanation, even though not required to do so.

1. **The Second Amendment**

Mr. Nóbrega argues that "the real crime" here is that the Second Amendment, U.S. CONST. amend. II, is infringed every day in this country, and that his conviction interferes with his "GOD given right to bear Arms if he chooses, not saying he did October 23 or 24 2010." *Pet'r's Obj.* at 5. Mr. Nóbrega is mistaken. The Second Amendment right to bear arms is not unlimited and the Supreme Court expressly ruled that the Second Amendment does not preserve a right to possess firearms after committing a felony. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)

6

("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . ."); *Lewis v. United States*, 445 U.S. 55, 65 n.8 (1980) (prohibitions on felons possessing firearms do not "trench upon any constitutionally protected liberties").

### 2. Jury Instructions

Mr. Nóbrega contends that the Court's jury instructions were illegal. *Pet'r's Obj.* at 8-10. Mr. Nóbrega does not suggest any particular misstatement of law but submits that jury instructions in general are illegal because "it is tampering with the Juries unbias decisionmaking . . . ." *Id.* at 8. Although Mr. Nóbrega cites authority that could be read to permit jury nullification, he presents no cases that held that jury instructions in general are illegal or unconstitutionally invade the province of the jury, and the Court did not locate any. Courts routinely give jury instructions, and in many circumstances the Constitution requires them to do so. *See e.g.*, *Taylor v. Kentucky*, 436 U.S. 478, 490 (1978) ("We hold that on the facts of this case the trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment").

### 3. Firearms not Listed on the Search Warrant

Mr. Nóbrega claimed his trial counsel was ineffective because she was unable to secure exclusion of evidence regarding an emergency telephone call trace record the Government used to obtain a warrant to search his house, but the Magistrate Judge explained that counsel was not ineffective when counsel moved to exclude the

7

evidence and the Court simply denied the motion. *Recommended Decision* at 18. Mr. Nóbrega does not object to this conclusion directly. Instead, he raises a new argument that there was a Fourth Amendment violation because the 9mm Glock handgun recovered during the search was not on the search warrant. *Pet'r's Obj.* at 12.

This argument lacks merit because even if the firearm was not specifically listed in the warrant, the police are authorized to seize additional articles discovered during a lawful search if their incriminating character is immediately apparent. See *Horton v. California*, 496 U.S. 128, 142 (1990).

> In this case the item[ ] seized from petitioner's home w[as] discovered during a lawful search authorized by a valid warrant. When [it] w[as] discovered, it was immediately apparent to the officer that [it] constituted incriminating evidence. He had probable cause, not only to obtain a warrant to search for the [specifically listed] property, but also to believe that the . . . handgun[ ] had been used in the crime he was investigating. The search was authorized by the warrant; the seizure was authorized by the "plain-view" doctrine.

*Id.*

### 4. Character Witnesses

Mr. Nóbrega claimed his trial counsel was ineffective because she did not call character witnesses, but the Magistrate Judge explained that Mr. Nóbrega failed to demonstrate prejudice from this choice because Mr. Nóbrega did not explain what the witnesses would have said that might have made a meaningful difference.[1] *Recommended Decision* at 19. Mr. Nóbrega objected that he "does not know what his

---

[1] Mr. Nóbrega does not describe his proposed witnesses as presenting habit evidence. Although Federal Rule of Evidence 406 allows for the admission of habit evidence, Mr. Nóbrega's description of the proposed testimony is consistent not with habit, but with character evidence. MARK S. BRODIN, JOSEPH M. MCLAUGHLIN, JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FED. EVID. § 406.02[4] (2d Ed. 2018) ("Habit refers to a succession of prior, separate acts. It must be distinguished from the prior part of a continuing act").

character witnesses would have said" but "[i]t would have been around the petitioner never owning a gun or them ever seeing petitioner with a gun . . . . But not limited to." *Pet'r's Obj.* at 12. This objection is consistent with the Magistrate Judge's opinion that Mr. Nóbrega cannot demonstrate prejudice from his trial counsel's decision not to call character witnesses, even if he could demonstrate that the decision was unreasonable.

Character evidence is "generally inadmissible for the purpose of proving action in conformity with that character." *United States v. Klebig*, 600 F.3d 700, 712 (7th Cir. 2009); FED. R. EVID. 404(a)(1). People act out of character all the time and the rules of evidence generally prohibit such evidence to avoid the danger that trials devolve into swearing contests about whether someone is good or bad, not the person's actual acts. It is true that under Rule 404(a)((2)(A), the general rule is different when a defendant offers evidence of his own character trait. *United States v. Jalbert*, 504 F.2d 892, 895 (1st Cir. 1974) ("[C]haracter evidence is normally admissible per se in aid of a defendant"). But the evidence must still be relevant. *See United States v. Navedo-Ramirez*, 781 F.3d 563, 569 (1st Cir. 2015); *United States v. Santana-Camacho*, 931 F.2d 966, 968 (1st Cir. 1991) ("[T]raits of character 'pertinent' to the crime charged must be relevant") (Breyer, J.). Moreover, if Mr. Nóbrega offered such evidence, the Government would likely have been allowed to question each character witness about specific instances of conduct to the extent the instances undercut the testimony and would likely have been allowed to present countervailing witnesses to

9

rebut the defendant's character evidence. *United States v. Bonner*, 302 F.3d 776, 781-82 (7th Cir. 2002).

Nor is evidence of specific instances of conduct especially probative. Under Rule 403, as with all evidence, the trial court would have been required to balance the probative value of such evidence against potential confusion and prejudice. *Santana-Camacho*, 931 F.2d at 968. Even assuming the witnesses would testify as Mr. Nóbrega indicates, testimony from one or more witnesses who had never seen Mr. Nóbrega with a firearm on other occasions would have to overcome, in the minds of the jury, the compelling evidence that Mr. Nóbrega in fact possessed a firearm on the occasion in question.

In short, it is by no means clear that Mr. Nóbrega's proposed character evidence would have been admitted or, if admitted, would have made a difference.

### 5. *Dean v. United States*

In a separate filing, Mr. Nóbrega argues that *Dean v. United States*, 581 U.S. ___, 137 S. Ct. 1170 (2017), bears on his challenge to the legality of his sentence. *Mot. of Notice on Dean v. U.S. No.: 15-9260 (2-28-17), My have Merit in Pet'r's Matter Before this Court 2255* (ECF No. 379). In *Dean*, the United States Supreme Court considered 18 U.S.C. § 924(c), which makes it a separate offense with a mandatory minimum sentence to use or possess a firearm in connection with a violent or drug trafficking crime. *Id.* at 1174. The Supreme Court in *Dean* held that sentencing courts may consider the fact of the consecutive mandatory minimum for the § 924(c) offense when they set the sentence for the predicate crime of violence or drug trafficking crime. *Id.* at 1178.

10

Mr. Nóbrega was only sentenced for being a felon in possession of a firearm under § 922(g)(1); there was no separate offense under § 924(c). Mr. Nóbrega's offense and penalty provision were unrelated to § 924(c). *Dean*, therefore, is inapplicable. Even if it did apply, *Dean* would not assist Mr. Nóbrega because it does not make sentences at the maximum of the statutory range impermissible or create a duty for courts to reduce sentences. *Dean* only confirmed district courts' discretion when sentencing for multiple offenses.

### B. The *Johnson II* Issue

On June 26, 2015, the United States Supreme Court decided *Johnson II*. 135 S. Ct. 2551. The Armed Career Criminal Act of 1984 (ACCA) provides for enhanced mandatory minimum penalties for prohibited persons possessing firearms after three previous convictions for a "serious drug offense" or a "violent felony." 18 U.S.C. § 924(e)(1). The term "violent felony" is defined in part by the "residual clause" of the ACCA, which refers to a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another[.]" *Id.* § 924(e)(2)(B)(ii). In *Johnson II*, the Supreme Court held that the residual clause of the ACCA was unconstitutionally vague. 135 S. Ct. at 2557. The following year, in *Welch v. United States*, 578 U.S. ___, 136 S. Ct. 1257, 1268 (2016), the Supreme Court held that *Johnson II* announced a new substantive rule that applies retroactively on collateral review.

Mr. Nóbrega was not sentenced under the ACCA, but the Probation Office and the Court set his guideline base offense level pursuant to U.S.S.G. § 2K2.1(a)(2), which refers to two prior felony convictions for a "crime of violence." The version of

11

the guidelines in effect at the time of Mr. Nóbrega's sentencing, in 2012, defined the term, "crime of violence," with a "force clause" and its own "residual clause" that matched the ACCA's word-for-word. *See* 2011 U.S.S.G. Manual § 4B1.2(a)(2); U.S.S.G. Amend. 798 (Aug. 1, 2016). Even assuming that Mr. Nóbrega's prior convictions constituted crimes of violence only as a result of the residual clause—in other words, that they did not meet the alternate definition under the "force clause"[2] of the guideline—*Johnson II* and *Welch* are of no assistance to Mr. Nóbrega now that the Supreme Court has decided *Beckles*.

In *Beckles*, the Supreme Court held that the guidelines "are not subject to vagueness challenges under the Due Process Clause . . . ." 137 S. Ct. at 890. The *Beckles* Court explained that the Sentencing Reform Act of 1984 replaced the broad discretion district courts traditionally possessed in choosing sentences within the statutory range with a system of factors and guidelines to inform that discretion. *Id.* at 893-94. The old system, however, was constitutionally permissible. *Id.* The Supreme Court reasoned, "If a system of unfettered discretion is not unconstitutionally vague, then it is difficult to see how the present system of guided discretion could be." *Id.* at 894.

Mr. Nóbrega's invocation of *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), which the Supreme Court recently affirmed in *Sessions v. Dimaya*, 584 U.S. ___, 138

---

[2] An offense also qualifies as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Mr. Nóbrega's North Carolina conviction for assault on a police officer with a deadly weapon and his Virginia conviction for assault and battery on a police officer both likely contain such an element, but the Court assumes the residual clause is necessary for purposes of addressing Mr. Nóbrega's *Johnson II* arguments.

S. Ct. 1204 (2018), is of little import after *Beckles*. *Dimaya* addressed a similarly worded residual clause in another statute, the Immigration and Nationality Act, which the Ninth Circuit and then the Supreme Court held was unconstitutional, just as the ACCA clause was in *Johnson II*. *Id.* at 1210. While *Dimaya* may have been further support for Mr. Nóbrega's arguments before *Beckles*, it does not undermine the distinction in *Beckles* between statutes and discretionary guidelines.

Because the Supreme Court has now resolved the precise question Mr. Nóbrega raises, the Court lifts the stay of the *Johnson II* issue, addresses his contentions, and concludes that his arguments must fail.

### III. CONCLUSION

The Court AFFIRMS the Recommended Decision of the Magistrate Judge (ECF No. 369). The Court DENIES Domingós Nóbrega's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 287), Motion for Notice of Applicability of New Retroactive Case, U.S. v. Johnson (ECF No. 335), Motion to Vacate Sentence Enhancement 2K2.1(a)(2) with Priors, by Johnson v. U.S. (ECF No. 336), Motion of Notice to Apply U.S.S.C. Dimaya v. Lynch (ECF No. 380), and his motion Applying Johnson II to Petitioner's Case (ECF No. 389). The Court further DENIES a certificate of appealability in the event Domingós Nóbrega files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

SO ORDERED.

/s/ John A. Woodcock, Jr.

JOHN A. WOODCOCK, JR.  
UNITED STATES DISTRICT JUDGE

Dated this 7th day of May, 2018